**BRANDYWOOD HOUSING, LTD., Appellant,**

v.

**TEXAS DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 01–00–00049–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 27, 2001.

Publication Ordered March 28, 2002.

Richard N. Countiss, Houston, Robert L. Templeton, Amarillo, for Appellant.

Kristina Weber Silcocks, Asst. Atty. Gen., Idolina Garcia McCullough, Austin, for Appellee.

Panel consists of Justices HEDGES, NUCHIA, and PRICE (Assigned).

## OPINION

FRANK C. PRICE,* Justice.

This is an inverse condemnation case brought pursuant to Article I, § 17 of the Texas Constitution.[1] Plaintiff/appellant, Brandywood Housing, Ltd. ("Brandywood"), sued defendant/appellee, the Texas Department of Transportation ("Tex-DOT"), alleging that TexDOT's reconstruction of a nearby highway caused Brandywood's apartment complex to flood. Brandywood appeals a take nothing judgment rendered in favor of TexDOT. We affirm.

## BACKGROUND

### A. Factual History

Spencer Highway, a roadway in Pasadena, Texas, originally was built between 1910 and 1930 by Harris County. It has remained, throughout its existence, a county road. In 1964, Harris County reconstructed the road, and it remained in that condition until 1993. TexDOT did not have any involvement in the original construction or the 1964 reconstruction of the road. Brandywood Apartments, which are adjacent to Spencer Highway, were built in two phases in 1970 and 1973. Between the years of 1979 and 1994, the apartments flooded 12 times.

In 1992, Brandywood purchased the apartments. At the time, Brandywood was aware of the property's flooding history, but gambled that this problem would be alleviated once the reconstruction project scheduled for Spencer Highway in 1993 was completed. The project began on time in 1993, and was completed in 1995. Because federal funds were used, TexDOT oversaw the new construction. Upon completion in 1995, TexDOT terminated all connections it had with the roadway.

Since the 1995 reconstruction, Brandywood Apartments have flooded five additional times. As a result, Brandywood

---

\* The Honorable Frank C. Price, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Article I, § 17 provides in part:

No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made....
TEX. CONST. art. I, § 17.

brought suit, alleging that TexDOT had "constitutionally damaged" its property, and that it was entitled to just compensation.

## B. Procedural History

This case was tried before a jury. After the close of evidence, the trial court determined, as a matter of law, that TexDOT had unconstitutionally damaged Brandywood's property. Thus, the court gave the jury an instructed verdict against TexDOT on the issue of liability, but submitted the issue of damages. The jury returned a verdict of $0 damages. TexDOT filed a post-verdict motion for a "judgment of non-liability as a matter of law," alleging that Brandywood had failed to prove that TexDOT's reconstruction was a "cause-in-fact" of the flooding. Specifically, TexDOT argued that Brandywood had failed to show that "but for" the reconstruction, the apartments would not have flooded.

After a hearing on TexDOT's motion, the trial court reversed its earlier ruling on liability and found that TexDOT was not liable, as a matter of law, for Brandywood's flooding. Accordingly, the trial court signed a final judgment that Brandywood take nothing from TexDOT. This appeal followed.

### PROXIMATE CAUSE

In its first issue, Brandywood contends that it proved, as a matter of law, that TexDOT had "unconstitutionally damaged" or "taken" its property without making just compensation. In issue two, Brandywood argues that, if TexDOT's liability was not proven as a matter of law, there were material fact issues on liability that should have been presented to the jury. Because the second issue determines the applicable standard of review, we address it first.

### A. Were there fact issues regarding proximate cause that should have gone to a jury?

Brandywood contends that, even if it did not prove that TexDOT was liable as a matter of law, there were disputed fact issues on the issue of proximate cause, which should have been submitted to a jury. Specifically, Brandywood claims that there is a "factual dispute over the effect on Brandywood of TexDOT's reconstruction of the highway and drainage system."

■ In this case, Brandywood has waived any complaint that causation should be determined by a jury by affirmatively requesting that the trial court remove the issue of proximate cause from the jury and to decide it as a matter of law. At the charge conference, Brandywood's attorney, in discussing the proposed question on damages, stated:

Yes, sir. This one area, and that is in paragraph 4. The sentence—the second sentence which states "You shall include only damages proximately caused by the 1993–95 reconstruction of Spencer Highway by the Texas Highway Department" because one—first, *that is not a proper element for determination of damages in the damage question. The question of proximate cause is a part of the determination by this Court of liability that under ruling case law the Court must make.* The determination—the proper question as to damages is what damages occurred as a result of the floods as stated in the first sentence. This puts back into the hands of the jury the question of liability for proximate cause. And there is no definition of proximate cause. *Proximate cause in this case is an element of liability and not an element of damages.* And then the way this particular sentence is worded, your Honor, also it says "You shall

include only the damages proximately caused by the 1993–95 reconstruction," which would lead to the argument for contention that the jury should only consider whether or not this highway, after construction, made the situation worse, and that is not the law of this case. It is not a question of whether or not it was made worse, it is simply a question of whether or not the highway as it existed at the time of these floods resulted in damages, and those are questions of law for the Court, *so we would respectfully request that the Court delete from its charge that sentence that, in effect, is inquiring about liability* and also asking for a comparison as to the prior highway. It will be confusing and misleading, and it also would be an unfair and direct comment upon the weight of the evidence that's contrary to the law in this case.

Brandywood argued that proximate cause was an element of liability, not damages, and, therefore, was an issue for the court to decide, not the jury.[2] Thereafter, at Brandywood's request, the trial court took the proximate cause reference out of the jury charge. Only after the trial court reversed its ruling on liability did Brandywood, in a motion for new trial, argue that the issue of proximate cause should have gone to the jury as a factual determination.

█ Because Brandywood asked that the issue of proximate cause be removed from the jury, and the trial court granted its request, Brandywood may not now claim on appeal that the trial court erred by failing to submit an issue on proximate cause. A litigant cannot ask something of

the trial court and then complain on appeal the trial court gave it to him. *Northeast Texas Motor Lines, Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (1942); *Dolenz v. American Gen. Fire & Casualty Co.,* 798 S.W.2d 862, 863 (Tex.App.—Dallas 1990, writ denied); *Flores v. Texas Employers Ins. Ass'n,* 515 S.W.2d 938, 940 (Tex.Civ.App.—El Paso 1974, no writ).

Because Brandywood cannot claim that the trial court erred by failing to submit a proximate cause issue to the jury, we overrule point of error two. Accordingly, we will not decide whether, in an inverse condemnation case, proximate cause is a jury issue or an element of liability to be determined as a matter of law. Instead, in this case, we will presume that the proximate cause issue was properly before the trial court, not the jury. Therefore, we turn now to Brandywood's first issue.

**B. Is TexDOT liable as a matter of law?**

In issue one, Brandywood contends that it proved that TexDOT was liable as a matter of law. Stated another way, Brandywood claims the trial court erred by directing a verdict in favor of TexDOT on the liability issue.

**1. Proving Causation in "Taking" Cases Involving Pre-existing Flooding**

█ To prove an inverse condemnation claim, the plaintiff must prove: (1) the governmental agency intentionally performed a certain act; (2) this action resulted in a "taking" of one's property; and (3) such taking was for a public use. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *Watson, Inc. v. City of Houston &*

---

**2.** *See Interstate Northborough P'ship v. State,* 45 Tex. Sup.Ct. J. 40, 66 S.W.3d 213 (2001) (whether there has been a taking or damaging under the constitution is a question of law for the court); *see also Harris Co. v. Felts,* 881

S.W.2d 866, 870 (Tex.App.—Houston [14th Dist.] 1994), *aff'd,* 915 S.W.2d 482, 484 (Tex. 1996) (once trial court determines that taking or damaging has occurred, issue of damages is then submitted to jury).

*DeVillier,* 998 S.W.2d 637, 640 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). Brandywood argues that it proved (1) that TexDOT intentionally rebuilt the roadway without providing adequate·drainage; and (2) that its property was damaged. TexDOT counters that Brandywood's property was already damaged when Harris County originally built Spencer Highway, and that its own 1995 reconstruction of the highway was not the cause of any further damage. More specifically, TexDOT argues that it did not proximately cause Brandywood's damages because Brandywood cannot show cause in fact, i.e., that "but for" the 1995 reconstruction, the flooding would not have occurred.

■■■ To prove TexDOT's liability as a matter of law, Brandywood was required to prove that TexDOT's intentional acts in building the roadway *proximately caused* its damages. Without causation, there can be no "taking." *Tarrant Reg'l Water Dist. v. Gragg,* 43 S.W.3d 609, 615 (Tex.App.—Waco 2001, pet. filed). This is supported by numerous cases stating that causation is an essential element of a "takings" case. "The true test [of whether there has been a constitutional taking or damaging] is, did the state intentionally perform certain acts in the exercise of its lawful authority to construct such highway for public use which resulted in the taking or damaging of plaintiff's property *in which the acts were the proximate cause of the taking or damaging* of such property." *Hale,* 146 S.W.2d at 736 (emphasis added).

■■ A "taking or damaging" by flooding is a specific type of inverse condemnation. *Gragg,* 43 S.W.3d at 619. In such cases, an issue about causation may be raised if the evidence shows that the property was subject to flooding both before and after the government's action. *See id.* at 620–21; *Ansley v. Tarrant County Water Control & Imp. Dist. No. 1,* 498 S.W.2d 469,

475 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). In *Ansley,* the court noted:

> If the land was previously subject to inundation, and after the [governmental action] was still subject to inundation, it has· been held that the owner was not entitled to recover for the damages caused thereby, unless the inundation after [the governmental action] was greater in extent than it previously had been.

498 S.W.2d at 475 (citing Nichols on Eminent Domain, 3rd ed., Vol. 5, sec. 16.105(1)); *see also Gragg,* 43 S.W.3d at 621 (holding "flooding will be considered to be a 'taking' only if 'inundation after erection of the [reservoir] was greater in extent than it previously had been' ").

The *Ansley* court also noted that the proper measure of damages in such a case was the decrease in the market value of the property, and stated:

> Where the evidence shows, as here, that injury to the land was caused by not only the conduct of the appellee, but also by another agency [the Trinity River], an issue is presented upon the question of whether the defendant's conduct, in fact, caused a decrease in the market value thereof.

498 S.W.2d at 475.

■■ The components of proximate cause are cause in fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 789 (Tex.App.—El Paso 1996, writ denied). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, *without which the harm would not have occurred. Doe,* 907 S.W.2d at 477 (emphasis added). If Brandywood's apartments would have flooded even without the reconstruction of Spencer Highway, it cannot be said that

TexDOT's action was a "cause in fact" of Brandywood's damage, unless TexDOT's reconstruction exacerbated the flooding.

Therefore, we hold that to prove causation, Brandywood was required to show that: (1) the flooding of its property was worse after Spencer Highway was reconstructed, and (2) the market value of its property decreased as a result of the increased flooding.

### 2. Was Causation Proved by Legally and Factually Sufficient Evidence?

As we stated earlier, the issue of proximate cause, in the context of determining whether there has been a "taking or damaging," was a factual determination to be made by the trial court because Brandywood objected to submitting the issue of causation to the jury. Had the trial court made findings of fact on the issue of causation, we could have reviewed those findings for legal sufficiency. *See Gragg*, 43 S.W.3d at 615. However, in this case, no findings of fact or conclusions of law were requested or filed.

 Because findings of fact were neither filed nor requested, the judgment of the trial court implies all necessary findings of fact to support it. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992). Legal and factual sufficiency of the implied findings may nonetheless be challenged upon appeal. *See id.* at 84. We apply the same standard of review to sufficiency challenges of implied findings as is applied in the review of jury findings. *See id.; Herter v. Wolfe*, 961 S.W.2d 1, 3 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

In reviewing the legal sufficiency of the evidence, we consider only the evidence and reasonable inferences tending to support the implied finding, viewing it in the light most favorable to the verdict. *See Herter*, 961 S.W.2d at 3. A legal sufficiency challenge will be overruled if there is more than a scintilla of evidence to support the implied finding. *See id.* When factual sufficiency of the evidence is challenged, we consider all the evidence, both in support of and contrary to the challenged implied finding, and uphold the implied finding unless it is against the great weight and preponderance of the evidence so as to be manifestly unjust. *See id.* at 4.

 To prove causation in a "taking or damaging" case involving pre-existing flooding, the plaintiff is required to show the following: (1) the government's action caused the flooding to increase, and (2) that the increased flooding caused a diminished market value of the property. Because the trial court found that no constitutional damaging had occurred, and no findings of facts were filed or requested, we must presume that the trial court found (1) no increase in the flooding after Spencer Highway was rebuilt, and (2) that the market value of the property was not lower after rebuilding the highway. We now address the sufficiency of the evidence to support these implied findings.

 Several expert witnesses (Roy Dodson, Sam Talje, and Bobby White) testified that the drainage system TexDOT used in the 1995 reconstruction was actually an improvement over the roadway as it existed before 1995. In fact, the elevation of the roadway was lowered, thus allowing more water to pass over it. In light of the testimony of these experts, we conclude that the evidence was legally sufficient to show that the 1995 reconstruction of the roadway did not increase the pre-existing flooding problems.

 We now review all of the evidence to determine whether the evidence was factually sufficient. Brandywood points to the following four sources of evidence that

it claims proves that the flooding was worse:

**1. Dr. Bedient's expert testimony**—Brandywood's expert testified that the existence of Spencer Highway caused the property to flood. However, he admitted that he only compared the natural elevation of land with the elevation as it existed at the time of the flooding, and did not consider whether the property would have flooded in the condition that it existed immediately before the 1995 reconstruction.

**2. Defense Exhibit 15**—Brandywood also argues that defense exhibit 15 shows that there was "more flooding with less rainfall after [the 1995] reconstruction." Exhibit 15 is a chronological history of the reported floods in the area from 1979 to 1999, which was prepared by TexDOT's expert, Roy Dodson. Brandywood points out that all of the floods before the reconstruction were caused by rains of more than four inches, but that after the reconstruction, rainfall of as little as 1.87 inches caused flooding. Brandywood argues that this raised the inference that the flooding situation was worse after the reconstruction. TexDOT counters that the exhibit shows not that the flooding was worse, but that the intensity of the rainfalls in the post–1995 period was greater.

**3. Steve Sterquell's lay testimony**—Brandywood's principal testified that he believed that the 1995 reconstruction was supposed to "fix" the flooding problem. Brandywood argues that this raises an inference that the 1995 reconstruction actually caused the problem to worsen. TexDOT contends that Sterquell's subjective expectation that the flooding problem would be improved is no evidence that TexDOT actually caused the problem to worsen.

**4. Jim Fletcher's lay testimony**—Another Brandywood principal testified as follows:

Q. What's the difference between Spencer Highway except in degree, and a tank dam both before and after it was reconstructed?

A. Impound more water.

Brandywood argues that this creates an inference that the 1995 reconstruction actually caused the property to hold more water than it did before the reconstruction.

This evidence is subject to more than one interpretation. Accordingly, the trial court could reasonably have believed TexDOT's experts and disbelieved Brandywood's evidence. Therefore, we hold that the trial court's implied finding that the 1995 reconstruction did not cause increase the flooding problem is not against the great weight and preponderance of the evidence.

Because there was legally and factually sufficient evidence to support the trial court's implied finding that the 1995 reconstruction did not increase the flooding of Brandywood's property, we hold that the trial court did not err by ruling that, as a matter of law, TexDOT did not constitutionally take or damage Brandywood's property.[3] In the absence of increased flooding, it cannot be said that TexDOT *caused* Brandywood's damages.

Accordingly, we overrule point of error one.

Because we have held that TexDOT is not liable as a matter of law, we need not address Brandywood's issue four (regarding damages) or issue five (regarding jury

---

**3.** Because Brandywood failed to prove increased flooding, we need not address whether they also failed to prove decreased market value, and decline to do so.

instruction on damages), and decline to do so.

We affirm the judgment.