# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00457-CV

Kenneth A. Roberson, Jr., Appellant

v.

City of Austin and Jester Development Corporation, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. 98-05750, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

This case involves a dispute between Kenneth A. Roberson, the City of Austin, and

Jester Development Corporation regarding an unrecorded sanitary sewer easement. We decide

whether Roberson's suit under the Uniform Declaratory Judgment Act ("UDJA")[1] was a proper

means of determining the validity of the easement. We also decide whether the trial court abused

its discretion in including "proximate cause" and "new and independent cause" definitions and

instructions in takings-claim jury questions regarding remainder damages and whether the trial court

properly granted summary judgment against Roberson's claim that the City's failure to notify him

of an unrecorded easement's existence violated his constitutional rights. For the reasons stated

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997).

below, we affirm in part, reverse in part, and remand for a determination of whether attorney's fees are warranted.

## BACKGROUND

In 1979, Jester Development Corporation ("Jester") began development of the Jester Estates subdivision in the City of Austin. Under the development plan approved by the City, Jester was responsible for designing and constructing sewer lines for the subdivision. City policy then required Jester to dedicate sanitary sewer easements to the City. *See* Austin City Code § 41-29 (Mun. Code Corp. 1967).

In 1980, Jester's engineering subcontractor, Espey, Huston & Associates, Inc. ("Espey"), designed and installed a sewer line running along a portion of the north side of what would later become appellant Kenneth A. Roberson's property. Although the subdivision's plat correctly indicated that there was a utility easement on the east boundary of the subject property, it did not reflect that there was a sanitary sewer easement along the north edge of the property. On March 26, 1980, Jester separately dedicated to the City a sanitary sewer easement along the north side of the subject property, allowing the City to perpetually maintain the sewer line. The executed easement was forwarded to the City but was not recorded in the Travis County deed records.[2] On July 1, 1982, the City accepted ownership and responsibility for maintaining the sewer line.

---

[2] The exact reason the Roberson property sanitary sewer easement and other easements for Jester Estates were not recorded remains unclear. However, the record indicates that there was uncertainty among Jester, Espey, and the City of Austin as to which party was responsible for recording the easements.

2

A home builder then constructed a house on the subject property. Roberson purchased the property and the house on March 1, 1983. The purchase documents did not reflect the presence of the sanitary sewer easement located on Roberson's northern lot line.

The sewer line under Roberson's property also ran beneath the property of his rear neighbor, Johnny Paul. In 1985, Paul had sued the City for damages allegedly caused by settling of the fill covering the buried sewer line. In response to the lawsuit, the City investigated and confirmed that it did not have recorded easements for the sewer lines running through Jester Estates. The Assistant Director of Engineering for the City's Water and Wastewater Utility considered a plan to have Espey contact affected Jester homeowners and inform them of the easements. Although the assistant director contacted Espey, the other residents of the subdivision were not notified of the easement problem by either Espey or the City. The City settled the lawsuit with Paul in 1988.

In 1997, Roberson noticed problems with his deck support and cracks in concrete flatwork on the northern side of the property. He also saw evidence of soil subsidence on the north and east side of his property.[3] Roberson asked Paul if he had also experienced problems on his adjacent property. Paul referred Roberson to his attorney, who then informed Roberson that an unrecorded sewer main ran beneath their properties.[4] According to Roberson, this was when he first learned of the easement and sewer line.

---

[3] Subsidence is the sinking or settling of land. It can be caused by the compaction of loose soils, the withdrawal of ground water, or other reasons.

[4] A confidentiality agreement in the settlement of the Paul's lawsuit against the City precluded Paul from telling anyone about the problem for two years. Although this clause had expired by 1997, its existence may explain Paul's reluctance to answer Roberson's question directly.

On May 29, 1998, Roberson sued the City under the UDJA seeking a declaration that the easement was invalid and that he owned the portion of the sewer line and sanitary sewer easement within his property boundaries. He sought attorney's fees and an injunction to bar the City from preventing his removal of the line. Roberson also brought alternative inverse condemnation and bad-faith taking claims. *See* Tex. Const. art I, § 17. In addition to these state law claims, Roberson brought six claims alleging violation of his rights under the United States Constitution. *See* 42 U.S.C. § 1983. Among these claims were alleged violations of his equal protection, substantive due process, and procedural due process rights. *See* U.S. Const. amend. XIV, § 1. In response, the City filed a general denial and sought a declaration under the UDJA that, by either express dedication or by implication, the City owned the wastewater line and associated easement. The City also asserted an alternative counterclaim for condemnation. *See* Tex. Prop. Code Ann. § 21.017 (West 2004).

The trial court granted a no-evidence partial summary judgment in favor of the City on Roberson's bad-faith taking and constitutional claims. The case proceeded to jury trial. The jury found the City had neither a valid express easement nor an implied easement. The jury also made findings that the fair market value of the easement as of the date of trial was $6,000, that the damage to the remainder of Roberson's property by reason of the taking was $25,000 as of the date of trial, and that Roberson's reasonable attorney's fees for preparation and trial totaled $111,227.

Following the verdict, Roberson moved for judgment under his UDJA claim, which would have authorized the trial court to award him attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). He also sought the above damages awarded by the jury as compensation

4

for the City's taking of the easement and damages to the remainder. The trial court denied Roberson's proposed election to recover under the UDJA because it decided that the action should have been brought as a trespass to try title action rather than as a request for a declaration. *See* Tex. Prop. Code Ann. § 22.001 (West 2004). But it did award Roberson the $31,000 of damages he had sought: $6,000 for the value of the easement and $25,000 for damage to the remainder of the property. As a result of the condemnation, the trial court also awarded the City title to the sanitary sewer easement. This appeal followed.

## DISCUSSION

Roberson brings three issues on appeal. First, he contends that the trial court abused its discretion by holding that the UDJA was unavailable and denying him attorney's fees. Second, he asserts that the trial court erred by including "proximate cause" and "new and independent cause" instructions and definitions in the jury questions regarding his remainder damages. Third, he argues that the trial court erred in granting summary judgment to the City on his procedural due process, substantive due process, and equal protection claims. We will address each issue in turn.

### *Declaratory judgment act and attorney's fees*

In his first issue, Roberson argues that the UDJA is a proper vehicle for determining the validity of an easement. We agree.

The body of law regarding the interrelation of trespass to try title, the UDJA, and easements remains contradictory and confused. *See Martin v. Amerman*, 133 S.W.3d 262, 264 (Tex. 2004) (addressing, in boundary dispute case, confusion over applicability of UDJA and trespass to

5

try title, but not mentioning easements or other nonpossessory property interests). The UDJA allows a party to seek a declaration of rights, status, or other legal relations under a deed, will, written contract, or other writings. Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997). It is to be liberally construed and administered. *Id*. § 37.002(b).

Texas courts have often applied the UDJA in construing the existence and scope of easements. *See*, *e.g.*, *Holmstrom v. Lee*, 26 S.W.3d 526, 532 (Tex. App.—Austin 2000, no pet.) (affirming trial court's declaratory judgment that plaintiffs had easement appurtenant to use water and septic lines); *see also Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984) (determination under UDJA of whether implied easement by necessity had been established); *Jones v. Fuller*, 856 S.W.2d 597, 602 (Tex. App.—Waco 1993, writ denied) (declaratory judgment that deed had conveyed to plaintiffs valid easements appurtenant).

Texas courts have also allowed parties to use trespass to try title actions to determine issues involving easements. *See*, *e.g.*, *Ellis v. Jansing*, 620 S.W.2d 569, 569 (Tex. 1981) (trespass to try title case involving claim of adverse possession of storm sewer easement owned by City of Waco); *see also Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 152 (Tex. App.—Austin 1998, no writ) (discussing trespass-to-try-title claim urging court to void State's easement, but dismissing claim on other grounds). "A trespass to try title action is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2004). In an action for trespass to try title, the defendant must be the person in possession if the property is unoccupied, or must be a person claiming title thereto if the property is occupied. Tex.

6

R. Civ. P. 784. The trespass to try title cause of action does not allow for the recovery of attorney's fees. *Martin*, 133 S.W.3d at 264.

In other cases, however, Texas courts have held that trespass to try title is not available where the property interest at issue is an easement or other nonpossessory interest. *See*, *e.g.*, *Mission v. Popplewell*, 294 S.W.2d 712, 714 (Tex. 1956) (stating that remedy of trespass to try title is not available to owner of ordinary easement because such owner does not have right to present possession); *see also T-Vestco Litt-Vada v. Lu-Cal One Oil Co.*, 651 S.W.2d 284, 291 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (holding that royalty interest is nonpossessory interest insufficient to support possessory remedies such as trespass to try title).

The supreme court recently clarified the differences between the two remedies in a boundary dispute case. *Martin*, 133 S.W.3d at 267-68. The court stated that "[a] boundary determination necessarily involves a question of title, else the parties would gain nothing by the judgment." *Id.* at 267. Moreover, the court held that the trespass to try title statute expressly provides that it is "the method of determining title to . . . real property." *Id.* Thus, when one seeks title to property, trespass to try title, and not the UDJA, is the proper cause of action. *See Martin*, 133 S.W.3d at 267-68; *see also Kennesaw Life & Accident Ins. Co.*, 694 S.W.2d 115, 117-18 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (holding in case concerning fee simple ownership of property that UDJA provides procedure for construction or validity of deeds, but substantive rights of parties in dispute over ownership of property are governed by trespass to try title).

Although *Martin* made explicit that boundary dispute claims are in fact trespass to try title claims and not UDJA claims, it made no mention of whether the existence and validity of

7

easements may be determined by a declaration under the UDJA. *See generally Martin*, 133 S.W.3d 262. What remains unclear is whether, under the *Martin* court's rationale, easement claims would be considered "title" claims only. For the reasons stated below, we hold that they are not.

We first note that the court's reasoning in *Martin* was confined to possessory interests in property. *See id.* For example, the court stated that the trespass-to-try-title statute is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld. *Id.* at 265. The court further declared that a boundary dispute inherently concerns title and possession of property. *Id.* In contrast, an easement is a nonpossessory property interest. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) ("Unlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes."). Put simply, an easement does not divest fee ownership of the property. *See State v. Ware*, 86 S.W.3d 817, 826 (Tex. App.—Austin, 2002, no pet.) (citing *Thompson v. Janes*, 252 S.W.2d 953, 956 (Tex. 1952)) (fee ownership of land remains in grantor of easement).

Second, we generally have not applied the remedy of trespass to try title to nonpossessory property interests such as easements. *See T-Vestco*, 651 S.W.2d at 291; *see also Mission*, 294 S.W.2d at 714. Although in some circumstances we have allowed trespass to try title as a vehicle to determine easement rights, *see Callaway*, 971 S.W.2d at 152, *Mission* and other cases render the applicability of trespass to try title to easement claims somewhat uncertain. *See Mission*, 294 S.W.2d at 714; *see also Ellis*, 620 S.W.2d at 569. Such uncertainty never existed in cases concerning boundary disputes. *Hunt v. Heaton*, 643 S.W.2d 677, 679 (Tex. 1982) (explicitly holding that boundary disputes can be determined under trespass to try title cause of action).

8

Finally, we note that a large number of easement cases have been decided under the UDJA. *See*, *e.g.*, *Holmstrom*, 26 S.W.3d at 532; *see also Koonce*, 663 S.W.2d at 452; *Jones*, 856 S.W.2d at 602. In addition, the UDJA, which is to be liberally construed, itself states that it applies to determine the validity of deeds. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.004, 37.002(b).

For these reasons, we hold that Roberson could properly bring his claims regarding the easement under the UDJA. To do otherwise would render the UDJA's language concerning its use in determining the validity of deeds meaningless.[5] *See* Tex. Gov't Code Ann. § 311.021(2) (West 1998) (stating that it is presumed that entire statute is intended to be effective); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, (Tex. 2001) ("We must presume that the Legislature intends an entire statute to be effective . . . ."). Because the trial court denied Roberson's award of attorney's fees on the basis that the UDJA was not an appropriate vehicle for determining the validity of an easement, we sustain Roberson's first issue.

Our holding does not mean that the trial court is required to award attorney's fees. The UDJA allows courts to award reasonable and necessary attorney's fees that the court considers to be equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009. However, the award of attorney's fees under the UDJA is a matter of discretion. *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654 (Tex. App.—Austin 1997, no pet.) ("A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just and the trial judge's power is in that respect discretionary."); *see Worford v.*

---

[5] We express no opinion regarding whether trespass to try title is also an appropriate means of determining easement rights. We merely hold that *Martin* does not foreclose the resolution of easement disputes by means of a declaratory judgment under the UDJA.

9

*Stamper*, 801 S.W.2d 808, 809 (Tex. 1990) (holding in child support case that court's order will not

be disturbed on appeal unless complaining party can show clear abuse of discretion). Thus, although

the trial court could award attorney's fees, it was not required to do so and may have had alternate

grounds for denying Roberson's request. *See Unified Loans*, 955 S.W.2d at 654. Therefore, we will

remand to the trial court for determination of whether attorney's fees should be awarded.

### *Jury charge*

In his second issue, Roberson argues that the trial court erroneously included

"proximate cause" and "new and independent cause" instructions and definitions accompanying the

jury questions concerning remainder damages.[6] He claims that the inclusion of this language was

harmful because it caused the jury to award him less than his full damages. We disagree.

---

[6] Question No. 8 asked: "What damages, if any, occurred to Kenneth Roberson's property as of July 22, 2002, which are proximately caused by the taking of the 7.5 foot strip of land as an easement for public sewer service purposes." It was proceeded by the following definitions and instructions:

> "PROXIMATE CAUSE," means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause.

> "NEW AND INDEPENDENT CAUSE," means the act or omission of a separate and independent agency, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question and thereby becomes the immediate cause of such occurrence.

The charge also contained a Question 6 that was identical to Question 8 except that the date of valuation was July 1, 1982.

When there is a claim that the jury charge included a mistaken application of the law, we review the jury instructions *de novo*. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002) (stating that question of whether definition in jury charge misstated law was legal question that court of appeals properly reviewed *de novo*). So long as the charge is legally correct, a trial judge is accorded broad discretion regarding the submission of questions, definitions, and instructions to the jury. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). Thus, we will review the trial court's legally correct definitions, instructions, and questions to the jury for an abuse of discretion. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 350 (Tex. Civ. App.—Austin 2002, pet. denied). We will find an abuse of discretion only if the questions and definitions were arbitrary, unreasonable, or without reference to guiding principles. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); *Ganesan*, 96 S.W.3d at 350. We will not reverse unless we find that an error in the jury charge caused an improper judgment to be rendered. Tex. R. App. P. 44.1(a)(1).

In most circumstances, inverse condemnation damages consist of two elements: (1) the fair market value of the part taken, and (2) the damages caused to the remainder of the tract by reason of the taking. *See State v. Carpenter*, 89 S.W.2d 194, 197 (Tex. 1936); *Uselton v. State*, 499 S.W. 2d 92, 96 (Tex. 1973) ("[W]ith very few exceptions . . . the courts of this State have followed the form and wording of issues suggested in *Carpenter* as consistently as if *Carpenter* had said no variation under any circumstances is permissible . . . .").

However, when there has been evidence of damage to property beyond the loss in value associated with the property right taken, Texas courts have departed from *Carpenter* and held

11

that it must be shown that the State's actions were the proximate cause of the damage. *State v. Hale*, 146 S.W.2d 731, 736 (Tex. 1941); *Brandywood Housing, Ltd. v. Texas Dep't of Transp.*, 74 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 621 (Tex. App.—Waco 2001), *aff'd*, 47 Tex. Sup. Ct. J. 707, 2004 Tex. LEXIS 590 (Tex. June 25, 2004).

In *Hale*, for example, a landowner brought a takings claim alleging that the State's construction of a road prevented the free flow of flood water and had damaged his farmland. *Hale*, 146 S.W.2d at 734. The court stated that "[t]he true test is, did the State intentionally perform certain acts in the exercise of its lawful authority . . . which resulted in the taking or damaging of plaintiff's property, and which acts were the *proximate cause* of the taking or damaging of such property." *Id.* at 736 (emphasis added).

*Gragg* concerned an inverse condemnation action alleging that the construction and operation of a reservoir by the State exacerbated flooding conditions on the plaintiffs' property. *Gragg*, 43 S.W.3d at 612-13, 621. Citing *Hale*, the Waco court held that the test was whether the State had exercised its lawful authority to construct and operate the reservoir for public use and whether this was a proximate cause of the taking or damaging of the property. *Id.* at 621.

In *Brandywood*, the plaintiffs alleged that the State's reconstruction of a highway caused repeated flooding of an apartment complex. *Brandywood*, 74 S.W.3d at 423-24. The court stated that the plaintiff was "required to prove that TexDOT's intentional acts in building the roadway *proximately caused* its damages. Without causation, there can be no taking." *Id.* at 426.

12

In this case, the record indicates that Roberson sought damages beyond the value of the sewer line easement and the effect the *existence* of the easement had on the market value of the remainder of his property. Specifically, he argued that the sewer line easement and the accompanying sewer line caused physical damage to his deck, concrete slab, and adjoining slab. Roberson's amended pleadings asserted that "[a]part from the diminution in market value, Plaintiff will in all probability continue to suffer damages to his house caused by the existence and location of the Sewer Main." In support of these claims, Roberson presented a report by a professional engineer that concluded that settling and sinkholes observed on the property may have been related to settling of the trench-fill soils covering the sewer line. The same report estimated the cost to adequately compact the trench fill materials at $415,000 to $480,000.

In response to Roberson's evidence of property damage, the City presented evidence that the presence of the sewer trench was not the cause of the damages. This included testimony by the developer that the fill was compacted, testimony by the home builder that the foundation rested on rock and not fill, survey data that the house was not built over the easement, and testimony from a structural engineer that there was no evidence that the sewer trench was causing settling or cracking of the house or front driveway. The structural engineer offered his opinion that any cracking in the driveway was due to soil erosion caused by water runoff from the property of Roberson's uphill neighbor. He estimated that remedying this problem would cost between $7,500 and $20,000. The City also elicited an admission from Roberson's expert that without further study he could not tell what was causing the sinkholes and depressions on Roberson's property.

13

Although this case does not entail damage to property by flooding, we find that it presents issues similar to those in *Hale*, *Gragg*, and *Brandywood*. The takings claims in each of those cases involved physical damage to property, as opposed to a loss in property value due to the taking, and a dispute between the parties as to the proximate cause of the damages. *See Hale*, 146 S.W.2d at 734, 736; *Brandywood*, 74 S.W.3d at 423-24, 426. *Gragg*, 43 S.W.3d at 612-13, 621. In like manner, Roberson alleged physical damages to his property, damages that were separate from the value of the easement and the impact of the easement's existence on the market value of the remainder of his property. The dispute between the City and Roberson as to causation of the damages in this case also parallels the flooding cases. Therefore, we find that the trial court's addition of "proximate cause" and "new and independent cause" definitions and instructions into the remainder damages questions submitted to the jury was not arbitrary, unreasonable, or without reference to guiding principles. *See Mercedes-Benz*, 925 S.W.2d at 666. Thus, we hold that the trial court did not abuse its discretion. We overrule Roberson's second issue.

### *Summary judgment*

In his final issue, Roberson argues that the trial court erred in granting no-evidence partial summary judgment in favor of the City on his procedural due process, substantive due process, and equal protection claims brought under 42 U.S.C. § 1983. These claims were based on Roberson's allegation that the City decided not to notify him of the easement and sanitary sewer line running across the north side of his property. Roberson asserts he presented sufficient evidence in support of these claims and, accordingly, that the trial court erred in granting the City's no-evidence partial summary judgment motion on these claims. We disagree.

14

Because the propriety of a summary judgment is a question of law, we review the district court's decision *de novo*. *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). Summary judgment will be proper if the non-movant failed to produce summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence establishing the existence of the established element. *Ridgway*, 135 S.W.3d at 600; *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000).

Municipalities may be sued for deprivation of constitutional rights under section 1983, but such deprivations must be pursuant to an official policy or pursuant to a widespread custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). An official custom is a persistent and widespread practice of City officials or employees which is so common and well-settled that, though not officially adopted and promulgated, can be said to fairly represent municipal policy. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). An official policy or custom must have been made by the municipality's lawmakers or by those "whose edicts or acts may fairly be said to represent official policy . . . ." *Monell*, 436 U.S. at 694. Therefore, liability cannot rest on the policy or custom of an individual official. *Bennett v. City of Slidell*, 728, 769 (5th Cir. 1984); *Monell*, 436 U.S. at 691 (holding that municipality will not be held liable for constitutional tort solely on basis of *respondeat superior*). Thus, municipal liability under § 1983 requires three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose

15

"moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*). These three attribution principles are necessary to distinguish individual violations of employees from those that can be fairly identified as actions of the government itself. *Id.*

We now determine whether Roberson presented evidence that the "moving force" of the City's actions was an official policy or custom. *See id.* Roberson's response to the City's Motion for Partial Summary Judgment in this case stated that "the summary judgment evidence is uncontroverted that all levels of City government were involved in the deprivation of Plaintiff's federal civil rights." In support of his claim, Roberson presented the deposition of the City's designated representative, two 1985 City memoranda regarding the investigation into the lack of recorded easements, and a copy of the City's settlement agreement with Roberson's neighbor.[7] The first three of these sources indicate that an assistant director of the City of Austin Water and Wastewater Utilities Department contacted Espey regarding the unrecorded easements and requested that Espey notify the affected landowners and remedy the problem. One of the letters indicated that a courtesy copy was to go to the director of the department. The settlement agreement reveals that the City was party to an agreement whereby Roberson's neighbors were not to disclose the terms of the settlement for two years.

This evidence establishes that certain City officials knew of the easement problem. Based on other evidence and the jury's finding of fact, it is also clear that Roberson was never

---

[7] Roberson also offered his own affidavit, the affidavit of the builder of his home, an engineering report, and an appraiser's report. However, this additional evidence is not relevant to the determination of City policy or custom.

16

notified of the existence of the easement and sewer line. Nevertheless, the evidence produced by Roberson does not demonstrate that the City acted pursuant to an official policy or pursuant to a persistent and widespread custom of not notifying landowners of unrecorded City easements. *See Pineda*, 291 F.3d at 328; *Webster*, 735 F.2d at 841. By itself, the fact that he was not notified is not sufficient to demonstrate that the actions complained of were more than potential violations by individual City officials. Without such a demonstration, the City cannot be held liable. *See Piotrowski*, 237 F.3d at 578. In like manner, the fact that the City settled a single dispute with Roberson's neighbor is not sufficient evidence of a City custom so widespread that it should be considered "official." *See Monell*, 436 U.S. at 694.

Moreover, Roberson failed to identify a policymaker "whose edicts or acts may fairly be said to represent official policy." *See Monell*, 436 U.S. at 694. Although he can point to knowledge by an assistant director of the Water and Wastewater Utilities Department, he did not present evidence to support the authority of that official to represent official policy for the City. Similarly, Roberson did not present evidence demonstrating that the nondisclosure clause in his neighbors' settlement was to prevent Roberson or other Jester Estate property owners from learning of the presence of unrecorded easements in the subdivision. Nor was he able to indicate who in the City authorized the settlement with his neighbors, whether that person had the authority to decide that subdivision property owners should not be notified of the unrecorded easement, or whether such nondisclosure clauses are a common practice of the City.

Consequently, we find that Roberson did not present more than a scintilla of evidence showing that the City's failure to notify him of a sanitary sewer easement on his property was made

17

by a policymaker or was made pursuant to official City policy or custom. *Ridgway*, 135 S.W.3d at 600; *Morgan*, 27 S.W.3d at 929. Therefore, Roberson's evidence was not sufficient to support a finding that the City's actions in this case fairly represent municipal policy such that the City can be held liable. *See Pineda*, 291 F.3d at 328; *Webster*, 735 F.2d at 841. Thus, we overrule Roberson's final issue.

## CONCLUSION

Because the UDJA is a proper vehicle for determining the validity of easements, we hold that the trial court's basis for denying Roberson's claim of attorney's fees was in error. But we hold that the trial court did not abuse its discretion in submitting the proximate-cause and new-and-independent cause definitions and instructions here. Finally, we find that Roberson did not present more than a scintilla of evidence to support a required element of his constitutional tort claims. Thus, the trial court did not err in granting partial summary judgment in favor of the City on those claims. We affirm in part, reverse in part, and remand to the trial court for a determination of whether Roberson should receive attorney's fees.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed in Part; Reversed and Remanded in Part

Filed: January 21, 2005

18