# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00061-CV

The Archaeological Conservancy, Appellant

v.

Wilson Land and Cattle Company and Will R. Wilson Jr., Appellees

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 06-834-C368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant The Archaeological Conservancy (the "Conservancy") filed suit against appellees Wilson Land and Cattle Company ("WLCC") and Will R. Wilson Jr. seeking judicial construction of a deed conveying land from WLCC to the Conservancy, subject to certain conditions subsequent, and a determination of the validity of WLCC's subsequent reverter deed conveying the property to Wilson Jr. After a bench trial, the trial court rendered judgment that the Conservancy take nothing by its suit. On appeal, the Conservancy argues that the trial court erred in its construction of the reverter clause contained in the original deed, that no evidence supports the court's finding that title in fact reverted from the Conservancy to WLCC, and that the cause should be remanded for a determination of whether the Conservancy is entitled to attorney's fees. We will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

The Conservancy is a nonprofit corporation established for the purpose of identifying, acquiring, and preserving significant archaeological sites throughout the United States. On April 11, 1991, Will R. Wilson Sr., as president of WLCC, executed a deed (the "Gift Deed") conveying a 2.5-acre tract of land ("the Property") to the Conservancy subject to the following conditions subsequent:

> (i) the Property shall be used predominantly to provide an archaeological laboratory for intermittent research excavations, restoration of Indian artifacts and habitats, exhibition of artifacts and restored habitats to the public or for any other archaeological purpose; (ii) all artifactual materials removed from the Property shall be donated to the Texas Archaeological Research Laboratory, the University of Austin or its successor, or another appropriate Texas archaeological repository, in the name of Grantor; (iii) this gift of the Property shall be acknowledged with a plaque on the Property in memory of Marjorie Ashcroft Wilson; and (iv) the Property shall be named the "Marjorie Ashcroft Wilson Archaeological Preserve".

The Gift Deed also contained a reverter clause, which stated:

> If at any time the Property shall no longer be used in conformity with the foregoing conditions, then this grant shall determine and come to an end, and without necessity for action on the part of Grantor, the Property and all rights therein shall revert to and vest in Grantor, its successors and assigns.

The Property remained with the Conservancy from 1991 until January 3, 2005, when Will R. Wilson Sr. signed a deed (the "Reverter Deed") on behalf of WLCC purporting to convey the Property to his son, appellee Will R. Wilson Jr.[1] The Reverter Deed recites that "the Property

---

[1] Wilson Sr. died in December 2005, and his estate is not a party to this appeal.

has not been used in conformity with the conditions of [the Gift Deed], and the grant has determined and come to an end, and title to the Property has reverted to and vested in Wilson Land and Cattle Company, Inc." The Conservancy asserts that it did not learn of the Reverter Deed until it was recorded on August 17, 2006.

The dispute giving rise to the instant controversy began during August 2006. According to the Conservancy, a number of real estate developers had approached it over the years in connection with development proposals in the vicinity of the Property. The Conservancy did not agree to consider any of these proposals, however, until a developer proposed a "land swap" deal wherein the Conservancy would exchange a 50-foot-wide strip along the Property's western border for a larger, more archaeologically significant piece of land.[2] On April 7, 2006, the Conservancy entered into an agreement with the developer to exchange the parcels of land and received $10,000 in earnest money. Then, on August 16, 2006, after obtaining approval from the Texas Historical Commission, the Conservancy approached Wilson Jr. about releasing the 50-foot strip so that the transaction with the developer could close. Thereafter, Wilson Jr. recorded the previously signed Reverter Deed, changed the lock on the entry gate, and posted "No Trespassing" signs on the Property.

After learning of the Reverter Deed, the Conservancy continued its efforts to pursue the deal with the developer. In September 2006, they amended the exchange agreement to grant the Conservancy additional time to try to remove the encumbrances from title to the 50-foot strip and

---

[2] The record indicates that the 50- by 210-foot strip of the Property that the Conservancy was to give up would have been used to provide driveway access to the developer, who intended to build townhomes on an adjoining parcel.

3

to delay the Closing Date until December 20, 2006, or within fifteen days of such date that the Conservancy provided clear title to the Property. When its efforts to negotiate with Wilson Jr. and WLCC proved unsuccessful, the Conservancy returned the earnest money to the developer and filed a trespass-to-try-title suit under Texas Property Code section 22.001 asserting ownership of the Property and alleging that WLCC had illegally granted title to the Property to Wilson Jr. The Conservancy later added a cause of action under the Texas Uniform Declaratory Judgments Act ("UDJA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). In the UDJA action, the Conservancy sought declarations "that Defendant Wilson Land and Cattle Company illegally deeded the property to Defendant Will R. Wilson, Jr. on January 3, 2005," and that the Conservancy "has not violated the terms of the April 11, 1991 deed in which Defendant Wilson Land and Cattle Company gave title to the Subject Property to Plaintiff." The Conservancy also sought attorney's fees under the UDJA and section 16.034 of the civil practice and remedies code. *See id.* § 16.034 (West 2008). WLCC and Wilson answered and counterclaimed for a declaration that title to the Property had reverted under the Gift Deed.

The case was tried to the court in October 2007. On the first day of trial, the Conservancy abandoned its trespass-to-try-title action, electing to proceed only on its declaratory-judgment action, after appellees raised a series of objections relating to the Conservancy's failure to comply with the special pleading and proof requirements applicable to trespass-to-try-title actions. *See* Tex. R. Civ. P. 783-809. In addition to objecting to the trespass to-try-title cause of action on the basis of procedural failings, appellees argued that the Conservancy's requests for declaratory relief that WLCC "illegally deeded the property to

4

Will R. Wilson, Jr." and that "plaintiff has not violated the terms of the April 11th gift deed" were also improper. In explaining their objection to the Conservancy proceeding on its declaratory-judgment action, appellees argued:

> That basically is taking their TTT [trespass-to-try-title] allegation and regurgitating it, I believe, as an attempt to get attorneys' fees because the next paragraph is for fees. So they—by this so-called declaratory judgment, they have not come at it from a different angle or a different degree or a different cause of action. It's simply they've restated it as a declaratory judgment action, and I think the same rules of evidence are going to apply. They've still—they've still got to have a certified copy [of the deed], and they've still got to comply with *Davis v. Davis*, I believe.

The Conservancy then conceded that it had not filed within three days of the suit a certified copy of the relevant deed and indicated that it would be willing "just to proceed on the declaratory judgment action." After a recess, the trial court resumed and clarified the matter:

The Court: Before we begin with witnesses, Mr. Reznik [counsel for the Conservancy], it's my understanding that the plaintiff desires to abandon the trespass to try title cause of action.

Mr. Reznik: That is correct, your Honor, and proceed with the declaratory judgment cause of action.

Following this exchange, the trial court denied appellees' motion for directed verdict that the Conservancy take nothing on its trespass-to-try-title cause of action, reasoning that the Conservancy had the right "to nonsuit the cause of action any time up until the trial actually starts."

During the three-day trial, the Conservancy's expert witnesses testified regarding the archaeological value of the Property, the practice of "conservation archaeology," and the Conservancy's efforts to "preserve" the site, which it asserted was an acceptable "use" for an

5

archaeological purpose in accordance with the Gift Deed's conditions. Appellees countered with evidence that the Conservancy failed to make appropriate use of the Property or to provide adequate security, thereby allowing the Property to suffer damage at the hands of looters.

One of the primary disputes at trial concerned the construction of the Gift Deed—specifically, what the contracting parties intended in drafting the first condition (that the Property be used "predominantly to provide an archaeological laboratory for intermittent research excavations, restoration of Indian artifacts and habitats, exhibition of artifacts and restored habitats to the public or for any other archaeological purpose"). Over the Conservancy's objection, the trial court allowed testimony from Wilson Jr. and admitted a number of exhibits documenting various correspondence between the Conservancy and Wilson Sr. prior to the execution of the Gift Deed. The court stated on the record that its basis for allowing the parol evidence was that "the parties weren't in agreement on what [the above-quoted language] meant, and there's some ambiguity." Wilson Jr.'s testimony and the documentary evidence tended to show that the Wilsons and WLCC intended this condition in the Gift Deed to ensure that the Property would be used for a public purpose—*e.g.*, that it would house a museum or an interpretive center or something of that nature—and not that it would be passively "preserved" for an indefinite period of time without ever opening the land to the public or actively conducting excavation on the site.[3]

---

[3] The essence of Wilson Jr.'s testimony is that it was his family's understanding that their donation of the site would be "an educational compliment to the Leanderthal [site,] which has enormous public interest in this community." The reference is to the so-called "Leanderthal Lady," one of the oldest and most complete human skeletons ever found in North America, discovered near the Property during an excavation by the Texas Department of Transportation in 1983.

At the close of the evidence, the trial court found that the Property had reverted to the WLCC and rendered judgment in favor of appellees. Its findings were memorialized in the final judgment signed November 1, 2007, which ordered that the Conservancy take nothing by its suit and decreed that "the property was not used as required in the reversionary clause in the gift deed . . . and therefore fee simple title to the property has reverted to [WLCC] and/or its successors and assigns" free and clear of any interest or claims of the Conservancy. On the Conservancy's motion, the trial court also issued findings of fact. Of relevance to this appeal are the following:

> Although [WLCC] expanded the size of the grant in reliance on the Conservancy's Representation that an interpretive center would be built or maintained on the Property, no such interpretive center or visitor's center was ever built or maintained on the Property.
>
> The Conservancy failed to set aside any area on the Property for an interpretive center or visitor's center.
>
> The Conservancy had no plans for building or maintaining an interpretive center or visitor's center on the Property.
>
> The Conservancy attempted to sell a portion of the Property intended for use as an interpretive center and related parking to a real estate developer for $100,000 and for other land.
>
> No portion of the Property has been excavated or interpreted for the public as a county, state or national park.
>
> The Conservancy never opened the Property to the public and had no plans to do so.
>
> The Conservancy did not use the Property predominantly to provide an archeological laboratory for intermittent research excavations, restoration of Indian artifacts and habitats, exhibition of artifacts and restored habitats to the public, or for any other archeological purpose.
>
> The Conservancy maintained no archeological laboratory on the Property.

7

No research excavations for archeological purposes took place on the Property after 1993.

No restoration of Indian artifacts and habitats took place on the Property.

The activities on the Property connected with the conservancy's planned sale of a portion of the Property to the real estate developer were not conducted for archeological purposes.

No exhibition of artifacts and restored habitats for the public took place on the Property.

The Conservancy now appeals, arguing that the trial court erred in finding the Gift Deed ambiguous without any pleading of ambiguity by the parties, thereby erroneously allowing parol evidence of the parties' intent and imposing requirements on the Conservancy not found within the four corners of the Gift Deed. The Conservancy also argues that the evidence supporting the trial court's judgment is legally insufficient.

**DISCUSSION**

As a preliminary matter and because it is dispositive of the issues that the Conservancy raises on appeal, we first address appellees' contention that the Conservancy's suit for declaratory relief was improper because it raised title issues that could only have been adjudicated in a trespass-to-try-title suit. In support of their argument, appellees rely principally on *Martin v. Amerman*, 133 S.W.3d 262 (Tex. 2004). In *Martin*, the Texas Supreme Court held that a trespass to-try-title action is the exclusive means to resolve the parties' substantive rights in a boundary-dispute case, thereby prohibiting the parties from adjudicating their claims in a declaratory-judgment action. 133 S.W.3d at 267 (noting that trespass-to-try-title statute "expressly

8

provides that it is '*the* method for determining title to . . . real property").[4] Several courts of appeals, including this Court, have interpreted *Martin* to mean that a trespass-to-try-title claim "is the exclusive method in Texas for adjudicating disputed claims of title to real property." *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. filed); *see Lile v. Smith*, 291 S.W.3d 75, 77-78 (Tex. App.—Texarkana 2009, no pet.); *Veterans Land Bd. v. Lesley*, 281 S.W.3d 602, 627 (Tex. App.—Eastland 2009, pet. filed); *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.], no pet.); *Ruiz v. Stewart Mineral Corp.*, 202 S.W.3d 242, 247-48 (Tex. App.—Tyler 2006, pet. denied); *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex. App.—Austin 1998, no pet.); *see also MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 & n.48 (Tex. 2009) (describing, in dicta, property code's trespass-to-try-title action as "exclusive remedy" for adjudicating title disputes).

As part of its request for affirmative relief, the Conservancy sought a declaration that WLCC "illegally deeded the property to Defendant Will R. Wilson, Jr."—a controversy that, at its heart, seeks to determine title to a defined parcel of land under competing deeds, which is precisely what the trespass-to-try-title action is intended to address. *See Lile*, 291 S.W.3d at 78 (declaratory relief that Smiths were owners of property and had wrongfully been denied access was improper and claims could only be prosecuted in trespass-to-try-title action); *Roberson v. City of Austin*, 157 S.W.3d 130, 136 (Tex. App.—Austin 2005, pet. denied) ("[W]hen one seeks title to property,

---

[4] Post-*Martin*, the legislature amended the UDJA to allow a party to obtain declaratory relief "when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2008).

trespass to try title, and not the UDJA, is the proper cause of action."). Indeed, the Conservancy itself acknowledges that one of the "ultimate questions" in this case is "who owns the Preserve," a question that squarely determines title to the Property and therefore could not be brought under the UDJA.

Yet the Conservancy also asked the trial court to declare the rights, status, or other legal relations between the parties under the Gift Deed, specifically by construing the terms of the Gift Deed's reverter clause and finding that the Conservancy had not violated the reverter clause. The Conservancy urges that, under the plain language of the UDJA, it was entitled to "have determined any question of construction or validity arising under" the Gift Deed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). The courts of appeals have not been entirely consistent in answering the question of whether a party may pursue declaratory relief when the controversy sought to be resolved by the declaration implicates title but does not directly decide it. *Compare Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.—Eastland 2003, pet. denied) ("Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form."); *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex. App.—Texarkana 1991, no writ) ("Any suit that involves a dispute over the title to land is, in effect, an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought."); *Kennesaw Life & Accident Ins. Co. v. Goss*, 694 S.W.2d 115, 118 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) ("While the [UDJA] specifically provides a procedural method for the construction or validity of deeds by those whose rights are affected by such instruments, the substantive rights of the parties are governed by the Trespass to Try Title statutes."), *with Cadle Co. v. Ortiz*, 227 S.W.3d 831,

837-38 (Tex. App.—Corpus Christi 2007, pet. denied) (allowing plaintiff to litigate validity of lien under UDJA, even though dispute "ultimately implicates title"); *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 730 (Tex. App.—Waco 1998, pet. denied) (permitting relief under UDJA in suit to construe oil and gas leases).[5]

What is clear, however, is that in trying to resolve whether a suit in this context may proceed under the UDJA, courts look to the heart of the dispute to determine whether, in substance, it is a dispute over title, or whether the true aim of the suit is simply to determine the validity or construction of a deed or other instrument. *See, e.g.*, *McRae Exploration & Prod. v. Reserve Petroleum Co.*, 962 S.W.2d 676, 685 (Tex. App.—Waco 1998, pet. denied) ("This suit involves a title dispute between competing deeds. It does not involve the construction or validity of the deeds. As such it is an action for trespass to try title and not for declaratory judgment."); *Bell v. State Dep't of Highways & Pub. Transp.*, 945 S.W.2d 292, 294 (Tex. App.—Houston [1st Dist.] 1997, writ denied) ("Bell makes no claim that the adverse possession statutes are ambiguous or invalid. He claims only that the State is not entitled to ownership under them. The Declaratory Judgment Act does not supplant a suit for trespass to try title under these circumstances. Moreover, the State claims ownership under a lost deed; thus, there is no deed whose validity must be determined or terms construed.").

---

[5] The Conservancy urges this Court to analogize the present case to *Florey v. Estate of McConnell*, 212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied), a case involving a suit to rescind a deed under the UDJA. We note, however, that Florey never raised an objection that the estate's claim to quiet title was governed by the trespass-to-try-title statute, which distinguishes that case from the present one. *See Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 320-21 (Tex. App.—Amarillo 2001, pet. denied) (if trespass-to-try-title claim is brought as declaratory-judgment action, absent objection to that procedure, any error in permitting suit under UDJA is waived).

11

In this case, while it is true that the Conservancy sought a construction of the terms of the Gift Deed, the real controversy between it and the appellees—as alleged in the Conservancy's petition—concerns who owns the land. The Conservancy's request for a declaration that it did not violate the reverter clause in the Gift Deed is not a separate, stand-alone controversy; rather, it goes to the heart of the dispute over title to the Property because it is clear that the Conservancy intended to use this declaration to establish that it had retained title under the Gift Deed. In other words, the Conservancy's suit to declare the Reverter Deed invalid and its request for a judicial construction of the Gift Deed's reverter clause were both means to determine title to the Property. Accordingly, we hold that the Conservancy had to pursue both as actions in trespass to try title and could not pursue either claim under the UDJA.

## CONCLUSION

Having determined that the exclusive remedy available to the Conservancy was in trespass to try title and not under the UDJA, we overrule the Conservancy's issues and affirm the judgment of the district court.[6]

---

[6] We note that the Conservancy does not challenge on appeal whether the trial court erred in rendering judgment on the appellees' counterclaims for declaratory relief regarding their rights under the Gift Deed. Therefore we express no opinion as to the propriety of the trial court's declaratory judgment construing the Gift Deed and declaring that fee simple title to the Property reverted to WLCC.

12

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   March 30, 2010