**Tom HERTER, Appellant
and Cross–Appellee,**

v.

**Lillian WOLFE and Stephen Murdoch,
The Liquidating Trustees of W & D In-
vestment Corporation, Appellees and
Cross–Appellants.**

No. 01–94–00669–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 18, 1995.

Jeffery B. Kaiser, David Huntt Baker, Houston, for Appellant.

Kenneth M. Morris, David A. Furlow, Houston, for Appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and MIRABAL, JJ.

## OPINION

O'CONNOR, Justice.

The issue in this case is whether Tom Herter, an attorney, breached his contract with his clients, Lillian Wolfe and Stephen Murdoch, the liquidating trustees of W & D Investment Corporation (W & D). We reverse and render.

W & D sued Herter for an accounting, breach of contract, breach of fiduciary duty, fraud, and breach of express, resulting, and constructive trust. After a non-jury trial, the court awarded W & D $5,000 from the original $10,000 retainer for the breach of contract claim. The court also awarded W & D $19,200 in attorney fees, but denied W & D other relief it sought in its motion for judgment.

Herter appeals the sufficiency of the evidence to support the finding that he breached the contract, the sufficiency of the evidence to support damages, and the reasonableness of the attorney fees. W & D contends in cross-points that the trial court erred by: (1) failing to find that Herter breached his fiduciary duties, (2) not awarding it the full $10,000 retainer, (3) not awarding it additional attorney fees, (4) failing to award it prejudgment interest.

### Fact Summary

W & D hired Herter in 1987, to protect its security interest in a film known as *Hanauma Bay*. The film was owned by Hanauma Bay Productions, Inc., (Hanauma) a bankrupt Hawaii corporation. Hanauma planned to contract with International Spectrafilm Distribution (Spectrafilm), a Hollywood company, to distribute the film. Spectrafilm demanded that W & D subordinate its lien before it distributed the film.[1] W & D wanted Herter to find another company to distribute the film so it did not have to subordinate its lien.

On August 24, 1987, W & D met with Herter,[2] and Herter's friend, Sid Gall, who was touted as the "movie man" with contacts in Hollywood.[3] In his retainer agreement with W & D, Herter agreed to "place you (W & D) in the most favorable position possible through utilization of industry knowledge and contacts as well as the legal process, to procure the completion and distribution of the subject film as well as the realization of financial return." W & D agreed to the contract terms and paid Herter $10,000 up front, and secured the remaining $40,000 retainer fee through a lien on a house in Friendswood.

Herter testified he met with Lillian Wolfe twice in August and twice in September, and talked by phone with her for about 15–20 hours during that time period. He testified that he did not account for his time in log books or any other writings. He testified that he wrote letters and made a lot of phone calls to fulfill the terms of the contract. He ·

---

1. In its brief, W & D contends the loan was for $165,000, but that there was potentially $1.4 million at stake.

2. Herter had worked for W & D and its predecessors since 1984 on other matters.

3. W & D contends that Gall attended law school, but has never been licensed to practice law. Herter testified that he thought Gall graduated from University of California at Berkeley law school, but he did not know where Gall was licensed to practice law.

testified that he started outlining pleadings for a lawsuit and did about 35 hours of research on causes of action. Herter testified that he did not keep any records of the work he did or the phone calls he made. Two pages of notes he took at the August 24, 1994, meeting were admitted into evidence. Another page of notes Herter took is in the record. Herter testified that he had not traveled to California, but that Gall had gone there twice. Herter testified that Gall made a number of telephone calls in California. Herter did not provide any copies of airplane tickets or receipts for Gall's travels.

On September 24, 1987, Wolfe testified she flew to California on Herter's representation that Gall would join her in a meeting with Mike Greco, one of the principals in the project. Wolfe testified Gall did not show up in California and she had to meet with Greco on her own. Wolfe said she spent $1,830 on her trip. Wolfe testified that after the California trip fell through, she called Herter to tell him she had no choice but to sign the subordination agreement with Spectrafilm. Wolfe signed the subordination agreement on September 29, 1987.

On October 11, 1987, W & D demanded that Herter account for expenses and return the unused portion of the retainer. Herter did not provide an accounting. On November 5, 1987, Herter sent Wolfe and Murdoch a letter in which he reviewed the terms of the contract. In that letter, Herter said their agreement provided that the retainer was earned when paid; he concluded with the statement that he would consult with Gall and inform them if their services had exceeded the $50,000 retainer. Murdoch called Herter in November and told him not to do any more work on the project.

In January 1988, Wolfe and Murdoch met in Herter's office and had a confrontation with Herter that resulted in his asking them to leave his office. On March 18, 1988, W & D sent another letter to Herter in which it stated that the "retainer described in the engagement letter was just that—an advance payment in order to retain your services, and against which engagement-related time and expenses would be charged." In May, Herter released the lien on the house, which

secured the remaining $40,000 of his retainer. Again, on October 20, 1988, W & D sent Herter a letter asking for an accounting. On March 7, 1990, W & D's counsel sent Herter another letter again demanding an accounting. In 1991, W & D sent another letter demanding an accounting. Herter responded that his retainer was not subject to an accounting and was deemed earned when paid.

### Breach of contract

In point of error one, Herter contends there was no evidence or, alternatively, insufficient evidence, adduced at trial to support the trial court's finding of breach of contract.

■■■ Herter did not request the trial court file findings of fact or conclusions of law. When we review a non-jury trial in which no findings of fact or conclusions of law were requested or filed, we presume the trial court made all necessary findings to support the judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *In re Estate of Johnson,* 781 S.W.2d 390, 391–92 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Without findings of fact, we will affirm the judgment if it can be upheld on any legal theory that has support in the evidence. *Worford,* 801 S.W.2d at 109; *Johnson,* 781 S.W.2d at 392.

■■■ An appellant may challenge implied findings of fact by legal and factual sufficiency points, just as jury findings and a trial court's findings of fact may be challenged. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). When an appellant challenges the legal sufficiency of the evidence to support an adverse finding, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding, and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Pizzitola v. Galveston County,* 808 S.W.2d 244, 246–47 (Tex.App.—Houston [1st Dist.] 1991, no writ). If there is any evidence of probative force (more than a scintilla) to support the finding, the point must be overruled and the finding upheld. *Catalina,* 881 S.W.2d at 297.

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding, we consider and weigh all the evidence, both that in support of and contrary to the challenged finding. *Pizzitola*, 808 S.W.2d at 247. In that review, we will uphold the finding unless we decide it is against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d 660, 661 (Tex.1951); *Pizzitola*, 808 S.W.2d at 247.

A fundamental principle of contract law is that when one party to a contract commits material breach of that contract, the other party is discharged or excused from any obligation to perform. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994). In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party is deprived of the benefit that it could have reasonably anticipated from full performance. *Id.* at 693. The less the non-breaching party is deprived of the expected benefit, the less material the breach. *Id.*

The contract between Herter and W & D is a letter from Herter to Wolfe, dated August 24, 1987. It reads:

Dear Ms. Wolfe:

This will confirm that I have agreed to undertake consultation and representation with respect to the above referenced project in association with Sid Gall. The purpose of our representation will be to place you in the most favorable position possible through utilization of industry knowledge and contacts as well as the legal process, to procure the completion and distribution of the subject film as well as the realization of financial return.

This will further confirm that our fee arrangement is as follows: an initial retainer of $50,000 with a cap on all fees of no more than $75,000.00. The retainer will be payable $10,000.00 in cash at time of acceptance with the balance of the retainer and any other fees incurred to be secured by and payable out of the proceeds of the sale of 2101 Pine Drive, Friendswood, Texas.

Please signify your acceptance by executing and returning the original of this let-

ter. Retainer will be complete upon receipt of the $10,000.00 down payment.

Sincerely,

(signed) Thomas Herter

Approved & Accepted:

(signed) Lillian Wolfe

Herter contends he fulfilled the terms of the contract by meeting with Wolfe on at least two occasions; making numerous out-of-state phone calls regarding the project; talking with Wolfe repeatedly about the matter; and by associating with Sid Gall, who met with several people in California on W & D's behalf. W & D contends Herter breached his contract by not rendering any legal services of value, not providing it with any legal instruments to protect its security interests, not filing a lawsuit, not maintaining time records, not sending any letters on its behalf, and not giving it any reports.

We first look at the evidence under the legal sufficiency point of error, to determine if there is any evidence to support the implied finding of partial breach of contract. In this analysis, we limit our review to that evidence that supports the implied finding and ignore all other contrary evidence. The two pieces of evidence that arguably support the implied finding are:

(1) Wolfe hired Herter to secure a favorable position through industry knowledge and contacts; that is, to secure a distribution agreement that did not require W & D to subordinate its lien.

(2) When Gall did not appear for the meeting in California, Wolfe said she felt compelled to sign the Spectrafilm agreement, which required W & D to subordinate its lien.

We find there is no evidence that Wolfe was compelled to sign the Spectrafilm agreement. Once Wolfe signed that agreement, it made Herter's performance under the contract impossible. Wolfe's contract with Herter did not specify a deadline for Herter's performance. The contract did not state that Herter's failure to appear at a meeting would be a breach of contract. There is no evidence that Herter deprived Wolfe of the benefit that she could have reasonably anticipated from full performance. Even though

Wolfe testified that she "felt compelled" to sign the Spectrafilm agreement, we find there is no evidence that any act or omission by Herter compelled her. We hold there is no evidence to support the court's implied finding of partial breach, and we sustain point of error one. For the same reasons we find there is no evidence of a breach, we also hold that finding is against the great weight and preponderance of the evidence.[4]

### Herter's Challenge to Attorney Fees

In point of error three, Herter contends there is no evidence, or, alternatively, insufficient evidence adduced at trial to support the reasonableness of the attorney fees awarded by the final judgment.

In view of our disposition of point of error one, we reverse the award of attorney fees.

### Breach of Fiduciary Duty

■ In cross-point number one, W & D contends the trial court erred by refusing to find that Herter breached his fiduciary duties as W & D requested in its motion to correct the final judgment. In cross-point number two, W & D contends the trial court erred in failing to award it the full $10,000 retainer, as it requested in its motion to correct the final judgment.

In the final judgment, the trial court stated that

> Based upon the testimony, evidence and arguments of counsel, the Court is of the opinion that Plaintiffs ... ought to recover judgment against Defendant Tom Herter, for breach of contract, in the following amounts.
>
> \*     \*     \*     \*     \*     \*
>
> All relief requested by any party and not specifically granted herein (including Plaintiff's requests for $10,000.00 in actual damages, increased attorney fees and punitive damages on their tort causes of action) is expressly denied.

W & D contends Herter breached his fiduciary duties by refusing to provide it with an accounting and (1) failing, until trial, to document his payment of $5,000 to non-lawyer Gall; (2) that Herter's retainer agreement was neither fair nor reasonable; (3) that Herter breached his trust to W & D; (4) award $10,000 as damages. i.e., the full amount of the $10,000 retainer, rather than the $5,000 actually awarded.

W & D's claims for breach of fiduciary duty are alternative claims regarding the same claim against the $10,000 retainer. W & D does not claim any damages not related to the retainer. W & D's claims for breach of fiduciary duty are the same claims in the breach of contract suit, merely recast as breach of fiduciary duty.

For the reasons stated in point of error one, we hold there is no evidence of breach of contract, even though recast as breach of fiduciary duty.

We overrule W & D's cross-points one and two.

### W & D's Challenge to Attorney Fees

W & D raises three additional cross-points. In cross-point number three, W & D contends that the trial court erred by failing to award it the additional attorney fees requested in its motion to correct the final judgment.

For the reasons stated earlier in this opinion, we hold the evidence to support the attorney fees awarded by the trial court is insufficient to withstand a challenge to the factual and legal sufficiency of the evidence.

We overrule cross-point three.

### W & D's Claim for Prejudgment Interest

In cross-point number four, W & D contends the trial court erred by failing to award it prejudgment interest, as requested in W & D's motion to correct the final judgment.

In view of our disposition of points of error one and three, we overrule this cross-point.

MIRABAL, J., dissenting.

---

4. In point of error two, Herter contends there was no evidence, or, alternatively, insufficient evidence, adduced at trial to support the damages found by the trial court to have resulted from the breach of contract. Because we sustain point of error one, it is not necessary for us to reach point of error two.

**6**

MIRABAL, Justice, dissenting.

I dissent.

To reach the conclusion that there was *no evidence* to support the finding of breach of contract, the majority had to consider only the evidence and inferences that tended *to support* the finding,[1] and decide there was *no such evidence.* I have reviewed the same body of evidence and conclude that not only is there legally sufficient evidence, there is also factually sufficient evidence to support the trial court's finding of breach of contract.

The evidence shows that W & D paid Herter a retainer of $10,000. The written retainer agreement did not specify that the retainer was non-refundable. According to W & D, time and expenses were to be charged against the retainer, and any unearned portion of the retainer was to be returned. At the end of the representation, W & D asked Herter for an accounting of his time and expenses. Herter refused to provide such an accounting, claiming the retainer was not subject to an accounting because it was earned when paid.

In my opinion, the trial court could have reasonably concluded from the evidence that Herter had a contractual duty to refund any unearned portion of the $10,000 retainer, and to provide an accounting of his time and expenses incurred in connection with his representation. Further, from the evidence the trial court could have properly concluded that a reasonable amount to be charged against the retainer was $5,000, and therefore, that the balance of $5,000 was unearned and should have been returned to the client. Based on such findings, the trial court could have reasonably concluded that Herter breached his contract with his client by not providing an accounting when requested, and by not returning the unearned portion of the retainer in the amount of $5,000.

Because, in my opinion, the evidence is legally and factually sufficient to support the trial court's findings regarding breach of contract, I would overrule Herter's points of error one and two, and would reach the merits of the remaining points and cross-points of error.

---

1. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).