Opinion issued March 23, 2006















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00545-CV




ALAN GRANT BODE, AS EXECUTOR OF ESTATE OF ROBERT E.
BODE, AND S.O.T.A.T., INC., Appellants

V.

FRANK’S INTERNATIONAL, INC. AND FRANK’S CASING CREW AND
RENTAL TOOLS, INC., Appellees




On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2002-02215




MEMORANDUM OPINION

          Appellants, Alan Grant Bode, as Executor of the Estate of Robert E. Bode, and
S.O.T.A.T., Inc. (collectively Bode), appeal from a judgment entered by the trial court
following a bench trial ordering that Bode take nothing from appellees, Frank’s
International, Inc. and Frank’s Casing Crew and Rental Tools, Inc. (collectively
Franks), and that the joint venture agreement between Bode and Franks was no longer
enforceable against Franks. Bode’s sole issue on appeal asserts that the trial court
erred by concluding that the joint venture agreement was not enforceable. Franks
contends that Bode’s appeal was untimely and that we therefore lack jurisdiction over
the appeal. We conclude that Bode timely perfected his appeal. We further conclude
that there is sufficient evidence to support the trial court’s judgment. We therefore
affirm.
Background
          Robert E. Bode (Robert) developed a product called the Mud Miser, which is
used on oil rigs to recapture used drilling mud and keep it from spilling onto the rig
floor, preserving the mud for reuse. On April 14, 1993, on behalf of his company,
Plug Monitor International Inc. (PMI), Robert entered into a joint venture agreement
(the Hot-Hed Agreement) with Hot-Hed, Inc. (Hot-Hed), which transferred
worldwide marketing rights for the Mud Miser to Hot-Hed in exchange for royalty
payments to PMI. On April 15, 1993, Robert, also on behalf of PMI, entered into an
international agreement with Hot-Hed International S.A. (the Hot-Hed International
Agreement), also transferring worldwide marketing rights for the Mud Miser in
exchange for royalty payments and 50% of the net profits for sales of Mud Misers. 
On July 21, 1993, Robert assigned “all rights, titles, interests, and privileges” in the
Hot-Hed Agreement and the Hot-Hed International Agreement, “including patents
pending” to Hot-Hed de Mexico S.A. de C.V. (Hot-Hed Mexico).
          Robert received a patent for the Mud Miser in March, 1994. On March 30,
1994, PMI notified Hot-Hed that, effective April 1, 1994, PMI was dissolving the
Hot-Hed Agreement due to Hot-Hed’s purported failure to perform its obligations
under the Hot-Hed Agreement. On the same day, Hot-Hed responded to PMI’s letter,
indicating that it was “seeking legal counsel to advise us as to how to initiate a
lawsuit on our behalf against PMI” and “Mr. Bodie’s [sic] choice to dissolve the joint
venture at this time is most disappointing to us.” Further, Dan Parascin, president of
Hot-Hed, testified at trial that in his opinion, the Hot-Hed Agreement still existed and
that Hot-Hed was still operating under the agreement throughout the time of trial.
          On August 4, 1994, Robert entered into a joint venture agreement with Franks
(the Joint Venture Agreement) purporting to assign Franks a one-half ownership
interest in intellectual property rights relating to the Mud Miser and convey
“exclusive marketing rights” in the Mud Miser in exchange for $50,000 and 25%
royalty payments. Paragraph 7.01 of the Joint Venture Agreement contains a
warranty representing that Robert
is the sole owner of and has good and marketable title to the Intellectual
Property rights relating to the Products, and, to Bode’s knowledge, no
other person or persons, entity or corporation, has any claim, right, title,
interest, or lien in, to, or on the Intellectual Property rights relating to the
Products.

On September 8, 1994, Franks recorded an assignment of the one-half ownership
interest in the Mud Miser patent with the U.S. Patent and Trademark Office.          In May, 2000, Franks stopped making royalty payments to Bode when Keith
Mosing, chief executive officer for Franks, discovered that Bode had a worldwide
marketing agreement with Hot-Hed. Subsequently, Bode filed suit, asserting claims
for breach of contract, breach of fiduciary duty and breach of the duties of care and
loyalty. Franks filed an answer and counterclaim, alleging breach of contract,
negligent representation, and fraud, and asserting various affirmative defenses. 
Following a bench trial, the trial court rendered judgment that both parties take
nothing on their claims and that the Joint Venture Agreement is no longer enforceable
against Franks. On April 2, 2004, in response to Bode’s motion to modify judgment,
the trial court modified its judgment to state that the Joint Venture Agreement is no
longer enforceable against either Bode or Franks. On June 7, 2004, the trial court
entered its findings of fact and conclusions of law.
Timeliness of Appeal and 
Validity of Findings of Fact and Conclusions of Law

          Franks contends that this appeal was not timely perfected because the modified
judgment was signed on April 2, 2004, and Bode only had 30 days after the judgment
was signed to perfect his appeal, i.e., until May 3, 2004. Franks further contends that
the trial court’s findings of fact and conclusions of law entered June 7, 2004, are
invalid because Bode did not renew his request for findings of fact and conclusions
of law after the trial court modified its judgment. Therefore, according to Franks, the
trial court’s 30 day plenary power pursuant to Rule of Civil Procedure 329b(d) started
anew when the trial court’s modified judgment was signed on April 2, 2004, and
would have expired on May 3, 2004, one day before Bode perfected his appeal. 
Further, Franks contends that the trial court’s plenary power would have already
expired by the time it filed its findings of fact and conclusions of law on June 7, 2004,
making them invalid.
          Generally, a notice of appeal must be filed within 30 days after the judgment
is signed. Tex. R. App. P. 26.1(a). An exception to this rule applies when findings
of fact and conclusions of law are requested and either required by the Rules of Civil
Procedure or could be properly considered by the appellate court; then, the notice of
appeal must be filed within 90 days after the judgment is signed. Tex. R. App. P.
26.1(a)(4). In a case tried without a jury, any party may request, within 20 days after
the trial judgment is signed, that the trial court prepare findings of fact and
conclusions of law. Tex. R. Civ. P. 296. A premature request for findings of fact and
conclusions of law shall be deemed to have been filed on the date of but subsequent
to the time of signing the judgment. Tex. R. Civ. P. 306c. There is no requirement
that a party renew a request for findings of fact and conclusions of law after a
judgment has been modified. See Harris County Hosp. Dist. v. Estrada, 831 S.W.2d
876, 878 (Tex. App.—Houston [1st Dist.] 1992, no writ). Further, we may treat
actions taken before an appealable order is signed as relating to an appeal of that
order and give them effect as if they had been taken after the order was signed. Tex.
R. App. P. 27.2.
          Bode timely requested findings of fact and conclusions of law before the trial
court’s entry of its modified judgment on April 2, 2004. Accordingly, Bode’s request
for findings of fact and conclusions of law was deemed to have been filed after the
trial court signed its modified judgment on April 2, 2004, and the notice of appeal
was thus due within 90 days after that date. Bode filed his notice of appeal on 
May 4, 2004, 32 days after entry of the trial court’s modified judgment, and therefore
within the 90 day period. Further, because the trial court’s plenary power did not
expire until 90 days from April 2, 2004, the trial court had plenary power when it
entered its findings of fact and conclusions of law on June 7, 2004.
          We hold that Bode timely perfected his appeal, that we thus have jurisdiction
over his appeal, and that the findings of fact and conclusions of law are properly
before this Court.
Sufficiency of the Evidence
          Bode contends that the trial court erred when it concluded that the Joint
Venture Agreement was not enforceable against Franks. Bode asserts that Franks did
not establish a legal basis for the trial court’s conclusion that the contract was not
enforceable, Franks was not entitled to rescission or offset, did not plead and prove
damages, waived its affirmative defenses by failing to request and secure findings of
fact, and breached the contract, causing damages to Bode. Bode further asserts that
Bode did not breach the contract or make any misrepresentations to Franks. 
          The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a
meeting of the minds, (4) each party’s consent to the terms, and (5) execution and
delivery of the contract with the intent that it be mutual and binding. Prime Prods.,
Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002,
pet. denied). When one party to a contract commits material breach of that contract,
the other party is discharged or excused from any obligation to perform. Herter v.
Wolfe, 961 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1995, writ denied). To
determine the materiality of a breach, courts will consider the extent to which the
nonbreaching party is deprived of the benefit that it could have reasonably anticipated
from full performance. Id. A breach of a covenant for right to convey title occurs at
the moment of its creation, because the covenant warrants that the transferor is the
owner of that which is being transferred. Compton v. Trico Oil Co., 120 S.W.2d 534,
537 (Tex. Civ. App.—Dallas 1938, writ ref’d). If the transferor does not have good
title, therefore, delivery of the contract which contains such a covenant causes an
instantaneous breach. Id. 
          Upon Franks’s request, the trial court entered findings of fact and conclusions
of law. The trial court entered a single finding of fact that stated, “The intellectual
property and other rights purported to be sold, transferred or assigned to Frank’s
International, Inc., in the August 5, 1994 Joint Venture Agreement had previously
been sold, transferred or assigned to other entities.” The trial court also entered a
single conclusion of law that stated, “The August 5, 1994 Joint Venture Agreement
is not enforceable against Defendants.” 
          The trial court’s finding of fact expressly found that Bode did not have the
rights to the property that it purportedly sold to Franks, which was a factual statement
that showed that Bode breached its warranty to Franks under the Joint Venture
Agreement that it had good and marketable title to the Mud Miser products. Because
Bode did not transfer any rights to Franks under the Joint Venture Agreement, Franks
was deprived of any benefits that it would have reasonably anticipated from full
performance of the Joint Venture Agreement. Herter, 961 S.W.2d at 4. Therefore,
the breach of warranty was a material breach, which excused any obligation of Franks
to perform. Id. We conclude that because the trial court found that no benefits were
transferred to Franks under the Joint Venture Agreement, the trial court held that
Bode materially breached the contract, thus excusing Franks obligation to perform.
          Bode also contends that Franks did not establish a legal basis for the trial
court’s conclusion that the Joint Venture Agreement was not enforceable. We must
therefore determine whether any evidence of probative force supports the trial court’s
finding or whether the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust.
          Findings of fact in a case tried to the trial court have the same force and effect
as a jury’s verdict on questions and are reviewable for legal and factual sufficiency. 
Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991); Min v. Avila, 991
S.W.2d 495, 500 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The trial court’s
conclusions of law are reviewable de novo. McDermott v. Cronin, 31 S.W.3d 617,
623 (Tex. App.—Houston [1st Dist.] 2000, no pet.). When, as here, the appellate
record contains a complete reporter’s record of the trial, the trial court’s findings of
fact are not conclusive, but subject to the same, well-settled standards that govern
legal and factual sufficiency challenges to jury findings. Comm’n of Contracts of the
Gen. Executive Comm. of the Petroleum Workers Union v. Arriba, Ltd., 882 S.W.2d
576, 582 (Tex. App.—Houston [1st Dist.] 1994, no writ); In the Interest of M.J.Z.,
874 S.W.2d 724, 728 (Tex. App.—Houston [1st Dist.] 1994, no writ). 
          In analyzing the legal sufficiency of the evidence to support findings on which
Franks had the burden of proof, therefore, we consider only the evidence and
inferences tending to support the challenged finding and disregard all inferences to
the contrary. See Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex.1986);
Arriba, 882 S.W.2d at 582. If any evidence of probative force supports the finding,
we must overrule the challenge and uphold the finding. S. States Transp., Inc. v.
State, 774 S.W.2d 639, 640 (Tex. 1989); Arriba, 882 S.W.2d at 582. In reviewing
this challenge, we first examine the record for evidence that supports the trial court’s
finding and disregard contrary evidence. See Arriba, 882 S.W.2d at 582. If no
evidence supports the finding, we then examine the entire record to determine
whether it establishes the contrary proposition as a matter of law. Id.
          In determining the factual sufficiency of the evidence to support findings on
which Franks had the burden of proof, as here, we must weigh all the evidence, both
supporting and conflicting with the finding, and may set the finding aside only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King’s
Estate, 244 S.W.2d 660, 661 (Tex. 1951); Arriba, 882 S.W.2d at 582. In reviewing
this challenge, we again examine the evidence to determine if some evidence supports
the trial court’s finding. See Arriba, 882 S.W.2d at 582. If some evidence supports
the finding, we must then determine, in light of the entire record, whether the finding
is so contrary to the great weight and preponderance of the evidence that the finding
is clearly wrong and manifestly unjust, or whether the great weight and
preponderance of the evidence supports nonexistence of the finding. Cain, 709
S.W.2d at 176.
          Bode contends that the Hot-Hed Agreement was dissolved and as a result,
Robert was free to enter into the Joint Venture Agreement with Franks. However,
Bode does not contest the validity of the assignment to Hot-Hed Mexico (the
Assignment). If a written instrument, such as an assignment, is so worded that it can
be given a certain or definite legal meaning or interpretation, then the court will
construe the contract as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). When a party has assigned his or her contract claims to a third party, the
assignor no longer has any justiciable interest in those claims as a matter of law. See
River Consulting v. Sullivan, 848 S.W.2d 165, 169–70 (Tex. App.—Houston [1st
Dist.] 1992, writ denied) (holding appellant had no justiciable interest in matter when
contract claims had been assigned and claims independent of contract were not
pleaded).
          The record shows that the Assignment conveys all of PMI’s “rights, titles,
interests, and privileges in and to” the Hot-Hed Agreement and the Hot-Hed
International Agreement to Hot-Hed Mexico, “including patents pending.” In the
Hot-Hed Agreement and Hot-Hed International Agreement, Bode conveyed
“worldwide marketing rights of the Mud Miser Tool” and “full world-wide marketing
rights,” respectively, to Hot-Hed and Hot-Hed International. Subsequently, in the
Joint Venture Agreement, Bode conveyed “exclusive marketing rights” and “one-half
of the intellectual property rights” to Franks. 
          The record supports the trial court’s finding that Bode had no rights to the Mud
Miser to convey to Franks and that Bode therefore breached its warranty to convey
title to Franks. The record shows that the Assignment transferred full marketing
rights, including patent rights associated with the Hot-Hed and Hot-Hed International
Agreements, to Hot-Hed Mexico. Accordingly, the record supports the trial court’s
finding that as a result of executing a valid assignment to Hot-Hed Mexico, Bode
transferred all rights in the Mud Miser to Hot-Hed Mexico and was therefore left with
no contract claims against Hot-Hed. Having transferred its rights to Hot-Hed Mexico,
Bode would have no authority to dissolve the Hot-Hed Agreement. The record also
supports the trial court’s finding that Bode’s transfer of all interests in the Hot-Hed
Agreement and the Hot-Hed International Agreement to Hot-Hed Mexico left Bode
with nothing to transfer to Franks, and as a result, Bode materially breached the Joint
Venture Agreement by breaching its warranty to convey title. See Compton, 120
S.W.2d at 537.



          Considering all inferences tending to support the trial court’s finding and
disregarding all contrary inferences, we conclude that there is evidence to support the
trial court’s finding that Bode transferred the intellectual property and other rights set
forth in the Joint Venture Agreement to entities other than Franks. We further
conclude that this finding is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust because the record shows that
the Assignment left Bode with nothing to transfer to Franks.
          We conclude that the trial court did not err in its conclusion that the Joint
Venture Agreement is not enforceable because of Bode’s material breach. We need
not address Bode’s remaining contentions that Franks was not entitled to damages,
because these issues are not before us. Specifically, Franks does not complain on
appeal that it was entitled to rescission, offset or contract damages, none of which
were awarded by the trial court. Bode, as the breaching party, cannot complain about
Franks’s entitlement to such damages. 
          We overrule Bode’s sole issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.