Opinion issued August 4, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00042-CV

———————————

Harris County Utility District No. 16, Appellant

V.

Harris
County Municipal District No. 36, Appellee



 



 

On Appeal from the 269th District Court

Harris County, Texas



Trial Court Case No. 2008-19422

 



 

MEMORANDUM OPINION

          Appellant
Harris County Utility District Number 16 appeals from a summary judgment
granted in favor of appellee Harris County Municipal District Number 36.  District 16 argues that we do not have
jurisdiction to consider its appeal because the trial court’s judgment was not
final.  See Tex. Civ. Prac. &
Rem. Code Ann § 51.001 (West 2008).  District 16 alternatively contends that, if
the judgment is final, the trial court erred in granting summary judgment in
favor of District 36 and in denying its request for declaratory relief.  

We reverse the trial court’s
judgment as to District 16’s claims for breach of contract and suit on a sworn
account, and we vacate the trial court’s judgment as to District 16’s
declaratory judgment claim and remand for further proceedings consistent with
this opinion.  The judgment of the trial
court is otherwise affirmed.

Background

District 16 and District 36 are
both conservation and reclamation districts created under article XVI, section
59 of the Constitution of the State of Texas for the purposes of conserving and
developing natural resources within each district’s boundaries.  Tex.
Const. art. XVI, § 59.  As part of its mandate, each district supplies
and distributes potable water to customers within its boundaries.

The
contract.  In September 1983, District 16
and District 36 each signed a Temporary Water Supply and Emergency Interconnect
Contract.  The contract provides for the
construction of an interconnection line between the districts, which allows
delivery of emergency water services. 
“Emergency” is defined in the agreement as “a mechanical or electrical
failure causing a loss of 50% or more of the productive capacity of a
district’s water system.”  During an
emergency, the district requiring water provides notice of the emergency to the
operator for the supplying district, which then supplies water to district in
need.  The contract provides:

During
an emergency, the District whose water system has failed may unlock and open
the valve [at the interconnection point] and [allow] water into its system and
may be supplied water by the other District, but only after providing notice of
the Emergency to the operator for the other District.  The District experiencing the Emergency may
continue to receive water during the continuation of the Emergency without
further notice to or approval by the supplying District; provided, however,
that neither District shall be obligated to supply water hereunder for longer
than a Temporary Period [i.e., a period not to exceed 15 days, unless otherwise
agreed in writing] and neither District shall be obligated to supply water
hereunder in such amounts . . . as will substantially impair the supplying
District’s ability to provide water to customers within [its] boundaries.

 

Under article VI of the contract,
all water flowing between the districts is to be metered at the interconnection
point.  The supplying district must read
the meter and “bill the using District promptly upon termination of the
Emergency or the Temporary Period, whichever is earlier.”  The price to be paid for water is determined
“by applying the rate charged by the supplying District at the time of delivery
for potable water services to its highest volume customers within the supplying
District’s boundaries.”  Article VI
further provides that the district receiving emergency water service must then
pay the supplying district within 30 days of receiving the bill.  If the receiving district refuses or fails to
pay within 60 days of receipt, the supplying district may refuse to supply
additional water until payment is made in full.

Article XII of the contract
includes general provisions.  Section
7.03 specifies a procedure for how the districts approve actions taken pursuant
to the contract.  It provides that
“approvals or consents shall be evidenced by resolutions adopted by the Boards
of Directors of the Districts or by an appropriate certificate executed by
persons, firm or entities authorized to . . . 
give approvals or consents [for the Districts] . . . .”  It further states that whenever approval or
consent is required under the contract, such approval or consent is effective
“without regard to whether such approval or consent is given before or after
the time required [by the contract].” 
Section 7.04 states that “[i]n the event that either District is
required by any regulatory authority to pay any fee, service charge, penalty,
or fine because of, or as a condition to, providing service to the other party
pursuant to this Contract, said fee, service charge, penalty, or fine may be
billed to the other party as an expense of providing water service . . .  in addition to all amounts due [for payment
of water services].”

          The controversy. 
Following the completion of construction on the interconnection point,
the districts provided emergency water services to each other for over 10
years.  In November 1999, the districts
extended the contract an additional 20 years and amended it to allow for in-kind
repayment.  The “Payment in Kind”
provision was added to article VI of the contract.  It provides:

          Notwithstanding anything contained in [a]rticle VI to the
contract, the Districts may mutually agree to make and accept repayment in kind
for water supplied and received during an Emergency.  If agreed by the District, the utility system
operators for the Districts shall coordinate such repayment in kind.

 

The amendment to the contract was signed by the
president of each district’s board of directors on November 12, 1999.  On or around the same day, the directors of
each district approved the amendment.

The districts employed a joint
operator, Severn Trent Environmental Services, Inc., which was responsible for
monitoring water flow and accounting for water usage between the
districts.  After the amendment was
adopted, the joint operator maintained a balance sheet reflecting the amount of
water received by and supplied to each district.  Each month, a Severn Trent engineer would
report this information to the boards of directors of each district.  From November 1999 until October 2006,
neither district invoiced the other for water used during an emergency.  Instead, the water was carried on account,
and each district, after providing the proper notice, would take water from the
other during an emergency.  The
difference in the number of gallons received by the districts was reported as a
balance owed by the receiving district.

Between 1999 and October 2006,
District 36 received significantly more water from District 16 than it
supplied.  After determining that its
need for emergency water supply had diminished, District 16 invoiced District
36 in the amount of $192,954.23 in order to settle the account.  District 36 refused to pay, and District 16
sued, alleging alternative causes of action for suit on a sworn account, breach
of contract, and quantum meruit. 
District 16 also sought a declaratory judgment confirming its
interpretation of the contract.

District 16 moved for summary judgment on all of its
claims.  With respect to its claims for
suit on a sworn account and breach of contract, District 16 argued that it had
conclusively established each element of those claims.  Alternatively, it argued that it had
established its right to recover the reasonable value of the water provided to
District 36 in quantum meruit, and that it was entitled to summary judgment on
liability.  With respect to its
declaratory-judgment claim, District 16 argued that if the trial court held
that it must take repayment from District 36 in kind, it was entitled to a
declaration that District 36 must pay regulatory or administrative fees
associated with settling the account.

District 36 filed a response and a cross-motion for summary
judgment, arguing that District 16 had failed to meet its summary-judgment
burden and that it was entitled to summary judgment against District 16.  Attached to these filings were various
account records, minutes from the meetings of each district’s board of
directors, affidavits, and deposition transcripts.  District 36 argued that the evidence attached
to its response raised questions of material fact as to each of District 16’s
claims.  It further argued that the
evidence attached to its traditional motion for summary judgment conclusively
proved that the amended contract language required District 16 to accept
in-kind repayment and that District 16 either had expressly agreed to accept
repayment in kind or, through its course of conduct, had ratified repayments in
kind.  District 36 argued that District
16 was precluded from recovering damages in quantum meruit because an express
agreement covered the subject matter of the lawsuit, and finally, District 36
argued that District 16 was not entitled to declaratory relief.

The
trial court granted District 36’s motion in its entirety and denied District
16’s.  District 16 appealed. 


Analysis

I.                 
Appellate jurisdiction

District
16 contends that the judgment is not final because it is incomplete,
indefinite, and uncertain.  District 36
counters that the judgment, which was granted in its favor, is final because it
disposes of all claims and parties.

Except
for “a few mostly statutory exceptions” which do not apply here, this court’s
jurisdiction is limited to appeals from final judgments.  Lehmann v. Har–Con Corp., 39 S.W.3d 191, 195 (Tex. 2001).
 We determine whether a decree is a
final, appealable judgment based on the language in the decree and the record
of the case.  Id.  A judgment is
final and appealable if it disposes of all parties and claims in the case.  Id.

Both
parties moved for summary judgment, and the trial court entered two orders—one
denying District 16’s motion for summary judgment in its entirety and one
granting District 36’s.  The orders do
not contain a Mother Hubbard clause, and neither order expressly dismisses all
of District 16’s claims.  Nevertheless, a
judgment is final if it is clear from the record that it disposes of all claims
and all parties.  Id.  The record demonstrates
that District 36 filed a traditional motion for summary judgment motion on all
of District 16’s claims.  Its prayer for
relief requested that the motion “be in all respects granted [and] that
[District 16] have and recover nothing . . . .” 
The trial court granted the motion in its entirety, thereby granting the
relief requested by District 36 and effectively entering a take-nothing
judgment against District 16.  See id. 
Because the language of the order and record in this case reflect the
trial court’s intent to dispose of all claims and parties in this case with
finality, we hold that this court has jurisdiction to consider this
appeal.  District 16’s first issue is
overruled.

II.              
Summary judgment

We review a trial court’s
summary-judgment decision de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  To prevail,
the movant has the burden of proving that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985); see Tex.
R. Civ. P. 166a(c).  A defendant moving for summary judgment
must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum,
Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997).  A matter is
conclusively established if reasonable people could not differ as to the
conclusion to be drawn from the evidence. 
City of Keller v. Wilson, 168
S.W.3d 802, 816 (Tex. 2005).  In deciding
whether there is a disputed issue of material fact precluding summary judgment,
we take as true evidence favorable to the non-movant, indulging every
reasonable inference and resolving any doubts in its favor.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

When, as in this case, both sides
move for summary judgment and the trial court grants one motion and denies the
other, we review the summary-judgment proof presented by both sides, determine
all questions presented, and render the judgment the trial court should have
rendered.  Valence, 164 S.W.3d at 661; CenterPoint
Energy Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied).  If the order
granting summary judgment does not specify the grounds on which it was granted,
the appealing party must demonstrate on appeal that none of the proposed
grounds is sufficient to support the judgment. 
Rogers v. Ricane Enter., Inc.,
772 S.W.2d 76, 79 (Tex. 1989); Tilotta v.
Goodall, 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ
denied).

A.              
Suit
on a sworn account and breach of contract

A suit on a sworn
account is “a procedural tool that limits the evidence necessary to establish a
prima facie right to recover on certain types of accounts.”  Williams
v. Unifund CCR Partners Assignee of Citibank, 264 S.W.3d 231, 234 (Tex.
App.—Houston [1st Dist.] 2008, no pet.); see
Tex. R. Civ. P. 185.  To establish a claim under Rule 185 of
the Rules of Civil Procedure, a plaintiff must allege that: it sold and
performed services for the defendant; the claim is due; the charges were just
and true; all lawful offsets, payments, and credits were applied; and the
damages are liquidated.  The plaintiff
must also include in its petition a systematic record of the services provided,
which shows with a reasonable degree of certainty the name, date, and charge
for each item and provides details on how the total amount was determined.  Meaders v. Biskamp, 316 S.W.2d 75, 78 (Tex. 1958); Hou–Tex
Printers, Inc. v. Marbach,
862 S.W.2d 188, 190 (Tex. App.—Houston [14th Dist.] 1993, no writ).

To prevail on its
breach of contract claim, District 16 must prove the essential elements of a
breach of contract claim, which are: (1) the existence of a valid
contract; (2) performance or tendered performance by the plaintiff;
(3) breach of contract by the defendant; and (4) damages sustained as
a result of the breach.  Williams, 264 S.W.3d
at 235–36 (citing Winchek v. Am. Express Travel Related Servs. Co., 232 S.W.3d
197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).  

The summary judgment
entered by the trial court was proper as to District 16’s suit on a sworn
account and contract claim only if District 36 conclusively negated at least one
essential element of each of District 16’s causes of action or
conclusively established each element of an affirmative defense.  Sci. Spectrum, 941 S.W.2d at 911.  In
its summary-judgment motion, District 36 argued that the amended contract
requires in-kind repayment; the districts expressly agreed to accept in-kind
repayment; and in the absence of an express agreement, District 16
ratified repayment in kind through its course of conduct.  District 36 also argued it was excused from
its obligation to pay because District 16 had failed to perform and thus
materially breached the contract.

1.       Whether the contract required in-kind
repayment.  In its motion for
summary judgment, District 36 argued that the amended contract only allows for
in-kind repayment.  We construe this
argument as an assertion by District 36 that it did not breach the contract by
refusing to pay in cash.  District 16
argued in its response that the amended contract does not require in-kind
repayment but rather, establishes alternative methods of payment, i.e., the
supplying district may elect to bill and receive monetary repayment or the
districts may mutually agree to make and accept repayment in kind for water
supplied and received during an emergency. 
On appeal District 16 contends that the trial court erred in granting
summary judgment on this ground because “the language of the contract does not
require in kind repayment.”

Article VI, sections
6.03 and 6.04 of the contract provide that upon the termination of an emergency
or the temporary period, the supplying district “shall bill the using District
promptly” for water taken during the emergency. 
The 1999 amendment, which added section 6.05 to article VI, provides
that “[n]otwithstanding anything contained in [sections 6.01 to 6.04] to the
contrary, the Districts may mutually agree to make and accept repayment in kind
for water supplied and received during an Emergency.  If agreed by the District, the utility system
operators for the Districts shall coordinate such repayment in kind.”

In determining the
meaning of a particular provision in a written contract, courts must examine
and consider the entire writing.  See Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  District 36’s
interpretation is contrary to the plain language of the amended contract.  See Valence,
164 S.W.3d at 662 (“Contract terms are given their plain, ordinary, and
generally accepted meanings . . . .”). 
Section 6.05 was added to the existing payment terms in the original
contract, and states that the districts “may” mutually agree to make and accept repayment in kind.  There is no language indicating that in-kind
repayment is the exclusive method of payment or that the districts must accept
repayment in kind, absent a mutual agreement between them.  Therefore, the contract does not require
in-kind repayment, to the exclusion of cash payment, and we cannot affirm
summary judgment on this ground.

2.       Whether District 16 expressly agreed to
accept in-kind repayment or, by its course of conduct, waived the express
agreement requirement. 
District 36 argues that District 16 either expressly agreed to accept
in-kind repayment or ratified in-kind repayment through its course of
conduct.  District 16 contends that District
36 failed to proffer conclusive evidence of an agreement to accept in-kind
repayment, and it argues that its course of conduct is irrelevant and that
District 36’s evidence of ratification is immaterial and
insufficient.  If, as District 36 argues, District 16 agreed to
accept in-kind repayment, then District 36 did not breach the contract and
summary judgment was proper.  See Sci.
Spectrum, 941 S.W.2d
at 911.  If, however, District 16
raised a question of material fact as to the existence of an agreement to
accept in-kind repayment, then the trial court’s summary judgment cannot be
sustained on this ground.  See Provident Life, 128 S.W.3d at 216.  

A party seeking to
enforce a contract bears the burden of proving that all conditions precedent
have been satisfied.  Mensa-Wilmont v. Smith Int’l, Inc., 312
S.W.3d 771, 781 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  When a party’s obligation under the contract
is conditioned upon the happening of a future event, the condition must be
performed or fulfilled exactly as set forth in the contract before the promise can
be enforced.  Centex Corp. v. Dalton, 840 S.W.2d 952, 956 (Tex. 1992); Beard Family P’ship v. Commercial Indem.
Ins. Co., 116 S.W.3d 839, 844 (Tex. App.—Austin 2003, no pet.).  Courts may excuse compliance with a condition
precedent if requiring its performance will cause extreme forfeiture or penalty
and if its existence or occurrence is not an essential part of the parties’
bargained-for exchange.  See Lesikar Const. Co. v. Acoustex, Inc.,
509 S.W.2d 877, 881 (Tex. App.—Fort Worth 1974, writ ref. n.r.e.).  

The failure of a
condition precedent may also be waived by the failure to insist on
performance.  Ames v. Great S. Bank, 672 S.W.2d 447, 449 (Tex. 1984); Farmer v. Holley, 237 S.W.3d 758, 760
(Tex. App.—Waco 2007, pet. denied). 
Waiver is an affirmative defense and is defined as the intentional
relinquishment of a known right or intentional conduct inconsistent with
claiming it.  Sun Exploration & Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex.
1987); Straus v. Kirby Court Corp.,
909 S.W.2d 105, 108 (Tex. App.—Houston [14th Dist.] 1995, writ denied).  To prove waiver, a party must show that the
other party to the contract had knowledge of the right and remained silent or
inactive for an unreasonable period of time. 
See Tenneco, Inc. v. Enter. Prod.
Co., 925 S.W.2d 640, 643 (Tex. 1996). 
Waiver may also be satisfied by showing intentional conduct inconsistent
with the claim of right.  Sun Exploration, 728 S.W.2d at 37.  Waiver is ordinarily a fact question.  Tenneco,
925 S.W.2d at 643.  Because waiver is largely
a matter of intent, it will not be implied absent a clear intent expressed in
words, acts, or conduct.  See EZ Pawn Corp. v. Mancias, 934 S.W.2d
87, 89 (Tex. 1996).

Under
the terms of the original contract, the districts exchanged emergency water services
for cash.  The amended contract provides
that the districts may mutually agree to make and accept repayment in kind, and
if agreed by the districts, the utility system operator for each district is
empowered to coordinate in-kind repayment. 
Section 7.03 requires each district to demonstrate its approval or
consent through a board resolution.  It
states:

Whenever
[the contract] requires or permits any approval or consent to be . . . given by
either District . . . [s]uch approvals or consents shall be evidenced by
resolutions adopted by the Boards of Directors of the Districts or by an
appropriate certificate executed by persons, firms or entities authorized to
determine and give approvals or consents on behalf of the Districts pursuant to
resolutions adopted by their respective Boards of Directors.

 

Accordingly, the in-kind repayment
provision conditions the supplying district’s obligation to accept in-kind
repayment on the mutual agreement of the districts; such agreement must be
evidenced by a resolution of each district’s board of directors.  

District 36 argues
that the summary-judgment evidence shows that the districts’ respective boards
approved repayment in kind or, alternatively, that District 16’s course of
conduct is conclusive evidence of its agreement to accept in-kind
repayment.  In support of its
summary-judgment motion, District 36 attached numerous exhibits, including
minutes from the regular meeting of the boards of directors for each district
and transcripts of the deposition testimony of District 36’s board president
and District 16’s board secretary. 
District 36 also relied upon minutes from the September 13, 2002 meeting
of District 16’s Board of Directors.  At
that meeting, a member of the board requested that its operator prepare a water
usage schedule that calculated the amount of water sold by District 16 to
District 36.  Another member then
recommended that District 16 carry water “on account” until it required
emergency water supply from District 36. 
“The Board concurred with such recommendation and directed [the
operator] not to take water from [District 36] unless and until the District
experience[d] an emergency requiring such water.”  District 36 also pointed to minutes from a
meeting of its board of directors in which its operator reported that both
districts had approved and executed the amendment to the contract and that the
Districts would “utilize water on an in-kind basis.”  

District 36
further argues that District 16’s course of conduct between 1999 and 2006
demonstrates that it “ratified the repayment in kind agreement.”  It notes that from November 2002 through
August 2006, District 16’s board of directors consistently carried water on
account and approved board minutes, which included the water usage
schedule.  It argues that District 16’s
conduct was inconsistent with the intent to bill and collect monetary repayment
and that District 16 ratified repayment in kind.

District
16 contends that there is a question of material fact as to whether it adopted
a resolution to accept in-kind repayment. 
It argues that District 36 failed to proffer sufficient
summary-judgment evidence to prove as a matter of law that District 16 agreed
to accept in-kind repayment.  In support
of its argument, District 16 relies on the deposition testimony and sworn
affidavit of its board secretary, who averred that “[n]o mutual agreement was
made . . . that outstanding water . . . was to be
repaid in kind.”  She also testified at
her deposition that she did not believe District 16 intended to accept in-kind
repayment after the amended contract was signed and that the board resolution
to carry water on account was not a resolution to accept in kind repayment and
did not satisfy the requirements of section 7.03.  She testified that the amendment provided for
an alternative method of repayment that had not been available under the
original contract, but that District 16 never agreed to accept in-kind
repayment because it never voted to that effect.

District
16 further contends that its course of conduct is irrelevant and that District
36’s summary-judgment evidence does not conclusively establish ratification of
an agreement to accept in-kind repayment. 
It argues that the alleged ratifying acts, such as approving board
minutes, are immaterial because the board minutes do not reflect an agreement
to accept in-kind repayment.

As discussed above,
the amended contract provides that “the Districts may mutually agree to make
and accept repayment in kind.”  Section
7.03 further states that whenever the approval or consent of the parties is
required, “[s]uch approvals or consents shall be evidenced by resolutions
adopted by the Boards of Directors of the Districts . . . .”  The contract does not include or indicate what
language is necessary to evidence a mutual agreement to accept in-kind
repayment, nor does it indicate how the parties are to go about making a mutual
agreement in writing.  District 36 has
proffered evidence that District 16 agreed to carry water on account,
which tends to establish that District 16 agreed to accept in-kind
repayment.  However, this evidence is not
conclusive, because District 36 has failed to demonstrate that a board
resolution to carry water “on account” is equivalent to a mutual agreement “to
make and accept in kind repayment” to the exclusion of ever seeking payment in
cash.  See Sun Exploration, 728 S.W.2d at 37.  Moreover, deposition testimony and the affidavit
from District 16’s board secretary raise questions of material fact about the
existence of a board resolution to accept repayment in kind.  District 36’s argument that District 16’s
course of conduct “ratified” the agreement to accept payment in kind is also
unavailing.  Section 7.09 of the contract
provides that:

No
waiver or waivers of any breach or default by either party hereto of any terms,
covenant, condition, or liability . . . or of performance by the other party of
any duty or obligation hereunder, shall be deemed a waiver thereof in the
future, nor shall any such waiver or waivers be deemed or construed to be a
waiver of subsequent breaches or defaults of any kind, character, or
description, under any circumstances.

 

District 36’s
summary-judgment evidence does not conclusively establish the existence of an
agreement to accept in-kind repayment. 
Likewise, District 36 does not conclusively establish that District
16 waived or ratified in-kind repayment through its course of conduct.  Accordingly, summary judgment cannot be
affirmed on the basis that District 16 either expressly or through its
course of conduct agreed to accept in-kind repayment. 

3.       Whether District 36 is excused from
making payment because District 16 failed to bill promptly.  District 36 argues that if there was not
an agreement by the districts to accept repayment in kind, it is excused from
making payment because of District 16’s failure to bill promptly within 15 days
of the termination of an emergency. 
District 16 argues that it was not obligated to bill within 15 days and
that the obligation to bill promptly is not material.

“It is a fundamental
principle of contract law that when one party to a contract commits a material
breach of that contract, the other party is discharged or excused from further
performance.”  Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196
(Tex. 2004).  However, when a breach is
immaterial, the non-breaching party is not excused from future performance and
may sue only for the damages caused by the breach.  See
Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994).  Whether a party’s breach of contract is so
material as to render the contract unenforceable is a question of fact to be
determined by the trier of fact based on the evaluation of several factors,
including the extent to which the non-breaching party will be deprived of the
benefit that it could have reasonably anticipated from full performance.  See
Hernandez, 796 S.W.2d at 693 n.2; Henry
v. Masson, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no
pet.).

In this case, District
36 argues that District 16’s failure to promptly bill was a material breach,
which excused its performance, i.e., its obligation to pay for the water.  District 36 contends that section 6.03 of the
agreement requires the supplying district to send a bill to the receiving
district “promptly following no more than 15 days after the supply of
water.”  In response to District 36’s
argument, District 16 argues that section 6.03 actually requires the supplying
district to bill the receiving district “upon termination of the Emergency or the
Temporary Period, whichever is earlier.” 
While District 16 acknowledges that a “temporary period” may last no
longer than 15 days under the contract, it contends that a supplying district
does not have an obligation to send a bill within 15 days of supplying
water.  It also argues that time was not
of the essence and that its failure to bill every time it supplied District 36
with water was reasonable given the type of agreement between the parties.

Ordinarily, the
determination of whether there has been a material breach is a question for the
jury.  See Hernandez, 796 S.W.2d at 693. 
But when it is clear that the parties intended that time be of the
essence, the failure to timely perform can be a material breach as a matter of
law.  See
Mustang Pipeline, 134 S.W.3d at 196. 
Such an intention is not manifest from the language of this
agreement.  The contract only requires
“prompt” billing, and District 36’s summary-judgment motion did not argue that
time was of the essence.  Moreover,
District 36 has not conclusively demonstrated that it was deprived of the
benefit it reasonably expected under the agreement.  See
Hernandez, 796 S.W.2d at 693 n.2; Herter
v. Wolfe, 961 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1995, writ
denied).  The record does not reflect
that District 16 ever refused to supply District 36 with water during an
emergency, and District 36 regularly received water usage reports, which stated
the balance of water owed to District 16.  
District 36 has not established as a matter of law that District 16
failed to bill promptly, nor has it conclusively proved that the failure to
bill was a material breach.  See Hernandez, 796 S.W.2d at 693
n.2.  Accordingly, summary judgment
cannot be affirmed on this ground.

4.       Whether District 36 is excused from
performance because of District 16’s failure to meter water at the
interconnection point. 
District 36 contends that District 16’s failure to meter water at the
interconnection point as required by section 6.01 of the contract was a
separate material breach that excused its obligation to pay.  District 16 argues that the districts had
previously agreed upon the method to be utilized to meter water and that any
breach on its part was immaterial.

As discussed above,
whether a party’s breach of contract is material is generally a question of
fact to be determined by the trier of fact. 
See id.  To support its position, District 36 attached
the deposition of Joe Laughlin, the president of District 36’s board of
directors.  Laughlin averred that from
June 2001 to September 2006, water supplied under the contract had not been
metered.  In response, District 16 argued
that the method of measuring water had been determined by the district’s joint
operator and that neither district had ever objected to the methods employed.  To support its position, District 16 attached
the contract, water usage records, and the affidavit of Juan Montano, an
employee of Severn Trent.  Article II of
the contract provides that the metering equipment “shall be capable of
adequately measuring the water to be supplied [and] shall be subject to the
approval of each of the Districts’ engineers. . . .”  District 16 argued that this alleged breach
was not material because the district’s joint operator had used the same method
to measure the amount of water supplied to the receiving district for over
twenty years.  Monanto averred that water
was measured by calculating the difference between the volume of water taken
from the supplying district’s metered pumps and the volume of metered water used
for maintenance or supplied to customers. 
At minimum, the evidence proffered by District 16 is some evidence that
any failure to properly meter water on its part was an immaterial breach.  See Hudson
v. Wakefield, 711 S.W.2d 628, 631 (Tex. 1986).  Because the resolution of these issues
involves questions of fact, we conclude that District 36 was not entitled to
summary judgment on the ground that District 16 committed a material breach of
the contract.

*        *        *

Because District 36
did not conclusively prove each element of an affirmative defense, and because
it failed to disprove an element of each of District 16’s claims for suit
on a sworn account and breach of contract, we hold that the trial court erred
in granting summary judgment with respect to those two claims.  We sustain District 16’s second and third
issues on appeal.

B.              
Quantum
meruit 

We next consider
whether the trial court properly granted summary judgment as to District 16’s
alternative cause of action for quantum meruit. 
In its fourth issue, District 16 argues that the trial court erred
in dismissing its quantum meruit claim. 
District 36 contends that District 16 is precluded from recovering
damages in quantum meruit because an express agreement covers the subject
matter of the suit.  District 36 also
argues that “[a]s a municipal utility district, [it] has governmental immunity
for all non-tort claims, except those specifically authorized under [sections
271.151 to 271.160 of the Local Government Code].”  See Tex. Local Gov’t Code Ann §§ 271.151–.160 (West
2005 & Supp. 2010).  District 16
argues that summary judgment was improper, despite the existence of an express
contract, because it partially performed, and because District 36 waived its
immunity. 

Quantum meruit is an
equitable and alternative theory of recovery intended to prevent unjust
enrichment.  See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 740 (Tex.
2005).  A cause of action for quantum
meruit arises when a plaintiff establishes that it has provided a valuable
service to the defendant, the defendant accepted the service, and the defendant
had reasonable notice that the plaintiff expected to receive compensation.  See
Excess Underwriters at Lloyd’s v. Frank’s Casing Crew & Rental Tools, Inc.,
246 S.W.3d 42, 49 (Tex. 2008).  However,
while a party may seek alternative relief under contract and quasi-contract
theories, it generally cannot recover under quantum meruit when there is a
valid contract covering the services or materials furnished and no exception
applies.  In re Kellogg Brown & Root, 166 S.W.3d at 740.  The Texas Supreme
Court has recognized only three exceptions to the general rule that an express contract
bars recovery under quantum meruit: 
(1) “when a plaintiff has partially performed an express
contract but, because of the defendant’s breach, the
plaintiff is prevented from completing the contract”; (2) “when a plaintiff partially performs an express contract
that is unilateral in nature”; and (3) 
in a construction contract, when a breaching plaintiff may recover the
reasonable value of services less any damages suffered by the defendant if the
defendant accepts and retains the benefits arising from the plaintiff’s
partial performance.  See Truly v. Austin, 744 S.W.2d 934, 936 (Tex. 1988).

None of the exceptions is applicable here.  First, District 16 has not been prevented
from performing any of its obligations under the contract.  Second, this is a bilateral contract, and third,
it is not a construction contract.  It is
undisputed that District 16 supplied a valuable service to District 36,
and the parties do not dispute the existence of an express contract covering
the emergency water services.  Therefore,
recovery under a breach of contract claim is available, and recovery under
quantum meruit is precluded.  

Because
we conclude that this theory of recovery was not available due to the existence
of an express contract, we do not reach District 36’s other arguments.  We hold that the trial court properly granted
summary judgment against District 16 on the grounds that it could not recover
under a cause of action for quantum meruit. 
District 16’s fourth issue is overruled.

C.              
Declaratory
judgment

In its fifth issue, District 16
argues that the trial court erred in denying its summary-judgment request for
declaratory relief.  District 16
pleaded an alternative cause of action for declaratory judgment.  It claimed that it was entitled to a
declaration that the party making an in-kind repayment be “obligated to pay any
regulatory or administrative fees, service charges, penalties, or fines
associated with that repayment, including but not limited to the water
importation or pumpage fees” if the trial court determined that it must accept
in-kind repayment.

Resolution of the declaratory
judgment claim depends on the trial court’s resolution of District 16’s
breach of contract claim.  We have
already sustained District 16’s second issue.  Because we reverse and remand on that issue, the
declaratory judgment issue is not ripe for resolution on appeal.  However, the parties are free to litigate
this matter upon remand.  Accordingly, we
vacate the trial court’s judgment granting District 36’s motion for
summary judgment as to District 16’s claim for declaratory judgment.  We also vacate the trial court’s judgment
denying District 16’s as to its declaratory judgment claim.

Conclusion

We reverse the trial court’s judgment as to District 16’s claims for
breach of contract and suit on a sworn account, and we vacate the trial court’s
judgment as to District 16’s declaratory judgment claim and remand for further
proceedings consistent with this opinion. 
The judgment of the trial court is otherwise affirmed.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.